CALIFORNIA WINE & LIQUOR CORPORATION *vs.* WILLIAM ZAKON & SONS, INC.

Suffolk. March 1, 1937. — May 28, 1937.

Present: RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*Unlawful Interference. Trade Name.*

A grant of the exclusive right and license to use the registered trade name of a product in a designated territory, in connection with a transfer of the business of selling and distributing the product under

that name and of the good will of the business in that territory, was not invalid as an assignment of the name in gross.

A dealer having the exclusive right in a designated territory to sell whiskey put out by a distillery under the trade name "Four Aces" was entitled to have another dealer, who had received a protest from him, enjoined from continuing competition with him by selling identical whiskey put out by the same distillery under the trade name "Royal Flush" in labelled bottles so closely resembling those in which the "Four Aces" whiskey was sold that the public would be likely to confuse the two.

BILL IN EQUITY, filed in the Superior Court on July 9, 1936.

The final decree from which the defendant appealed was entered by order of *Baker,* J.

*J. Friedberg,* for the defendant.

*F. T. Leahy,* for the plaintiff.

PIERCE, J. This is a suit in equity wherein the plaintiff seeks a decree which enjoins the defendant from selling or offering to sell whiskey under the name of "Royal Flush," in bottles so designed as to shape and markings and so labelled as to constitute an imitation of the bottles and labels now used by the plaintiff in selling whiskey under the name of "Four Aces." After answer was filed by the defendant, the case was referred to a master to find the facts and report his findings. The master heard the parties but refused to consider the question of damages until the question of liability had been passed on by the court. No objections to the report were filed by either party, and the report was duly confirmed by an interlocutory decree. The final decree, from which the defendant appealed, reads: "That the defendant, William Zakon and Sons, Inc., its agents, employees, officers, and servants, be and they hereby are enjoined and restrained from selling, offering for sale, or otherwise disposing of to the public or through the medium of public offerings or advertisements, in or throughout the State of Massachusetts, any whiskey in bottles deceptively and confusingly similar in design and markings to the bottles in which the seven year old rye whiskey, manufactured by the British Columbia Distillery Company, Limited, and marketed under the trade name, 'Four Aces,'

is now offered for sale and distribution, and with labels deceptively and confusingly similar in coloring, wording, and design to those used on said 'Four Aces' bottles; and, in particular, from selling, offering for sale, or otherwise disposing of to the public, through the medium of public offerings or advertisements, in or throughout the State of Massachusetts, the whiskey that has been sold by the defendant under the trade name, 'Royal Flush,' in bottles and with the front and back labels of the kind now used."

In substance the master found the following facts: The British Columbia Distillery Company, Limited, of Vancouver, hereinafter called the Columbia company, for years before the repeal of the United States prohibition act, and since the repeal of that act, has been in the business of distilling whiskey, and of distributing it under the name of "Four Aces," in a special bottle with a distinctive label in which it had acquired certain rights. The name "Four Aces" was registered in the United States Patent Office on June 22, 1933. The repeal of the prohibition act became operative on December 5, 1933. Since September, 1934, the plaintiff has had, in successive contracts with the Columbia company, the exclusive right in New England to sell whiskey bottled by the Columbia company under the name of "Four Aces." Material paragraphs of the latest contract, dated October 14, 1935, read: (1) "The Distillery, in consideration of the mutual releases and promises herein given, and the sum of one dollar and other valuable considerations, paid by the California Company to the Distillery, the receipt whereof is hereby acknowledged, does hereby grant, transfer, and convey to the California Company, its successors and assigns, the entire business of the sale and distribution of all whiskey under the trade name and trade designation 'Four Aces,' in the New England States but in no other territory, and the good will of the said business. And the Distillery grants to the California Company the sole and exclusive right to use in the New England States only, the said trade name and trade designation 'Four Aces' in connection with the sale of or

as the trade name of whiskey or any other kind of liquors or beverages''; and (2) ''And the Distillery in conjunction with the conveyance to the California Company of the said business and good will in the New England States, does hereby grant, transfer, and assign to the California Company the sole license to use in said New England States only, all right, title, interest and property which it has in the trade name, 'Four Aces,' as the same has been registered on June 27, 1933, in the United States Patent Office under Registration No. 304261, and as the same has been registered and/or used in the New England States or any of them.''

The Columbia company also put up a whiskey, identical in quality with that sold by it under the name of ''Four Aces,'' in other containers and under the name of ''Royal Flush.'' That is to say, the Columbia company has sold to some of its customers this whiskey in bottles labelled ''Four Aces'' and has sold to others whiskey of the identical type and quality in bottles labelled ''Royal Flush.'' These ''other containers'' are marked by surface designs distinctive of the company's bottles and on the reverse side of each bottle there is worked into the glass the company's initials. The master found that there is no trade mark right granted under the laws of the United States or any individual State in the words ''Royal Flush'' as applied to whiskey in the United States, so far as the evidence before him showed. Respecting these latter bottles, he found ''that a customer, looking at a group of bottles of whiskey on display in a store might readily be deceived by looking at a bottle of 'Royal Flush' into the belief that it was the same product which he may have purchased or heard of under the name of 'Four Aces' ''; that ''this is so by reason of the general form of the labels, the fact that both names are placed in corresponding spots on the label and each printed in an arc; that the playing cards in each label are arranged in the same fashion, notwithstanding the fact that in one label there are five instead of four; and that the description of the whiskey as 'straight whiskey, American type' is, in each instance, put in bold type in approxi-

mately the same spot on the label and being in practically the same color scheme on each label."

The defendant bought a quantity of the "Royal Flush" from some person outside Massachusetts and offered it for sale "on the Boston market." This whiskey had been sent by the Columbia company, in bond, to New York City, for the account of the Standard Wine and Liquor Co. Inc., which holds the distributing rights on "Four Aces" throughout the United States except in New England. There is no evidence in the record as to whether the Standard Wine and Liquor Co. Inc. had any distributing rights in "Royal Flush." As before stated, the "Royal Flush" whiskey was bottled in Canada at the distillery, in bottles identical in construction and design with those used in putting up "Four Aces." The defendant has not altered the bottles, labels or contents in any way, but has been putting the merchandise on the market here exactly as it was received. There is no claim that the defendant, at the time it purchased the merchandise, had any knowledge of the alleged exclusive agency of the plaintiff or of the trade mark rights of the distillery until it was so informed, by the attorney for the plaintiff, about one week before the bringing of this bill of complaint. Since such notice the defendant has continued to sell "Royal Flush."

On the above facts the defendant contends that a proper decree was not entered because (1) the defendant's whiskey was in quality the same whiskey as the plaintiff's; (2) the validity of the assignment, as a matter of substantive law, is open to question because it is or purports to be an assignment of a trade name in gross; and (3) the plaintiff's rights extended only to the use of the words "Four Aces" and not to the form of the labels and bottles. The defendant directs attention to the fact, which is apparent on the pleadings, that this is not a suit for infringement of patent rights, nor of registered trade marks or trade name rights, but is manifestly a suit based upon the claim of "unfair trade practice" or "unfair competition."

The main question in the case at bar, therefore, is whether the plaintiff, under the principle either of unfair competi-

tion or of trade name infringement, may enjoin the defendant from selling the same whiskey which the plaintiff sells, under a label so closely resembling the plaintiff's label that the public is deceived into thinking that "Royal Flush" whiskey is "Four Aces" whiskey.

Since the contract between the plaintiff and the Columbia company purported to transfer the good will of the business of selling the Columbia company's "Four Aces" whiskey in New England in connection with the name "Four Aces," the assignment may be said to be a sufficient assignment and not an invalid assignment, in gross, of the mark. *Gehl* v. *Hebe Co.* 276 Fed. 271, 273. The exclusive right given to the plaintiff by the contract to use the trade name "Four Aces," or to sell "Four Aces" whiskey in a restricted territory, is a subject for protection, and the assignee has the right to have third persons enjoined from imitating the name in order to pass off their goods as those sold by the plaintiff. *Marsh* v. *Billings*, 7 Cush. 322, 330–331. Compare *Scandinavia Belting Co.* v. *Asbestos & Rubber Works of America, Inc.* 257 Fed. 937, 957–958; certiorari denied 250 U. S. 644.

When relief is sought against a defendant on the basis of unfair competition, it is generally held to be essential for the plaintiff to prove that the defendant is passing off his product as that of the plaintiff. *Kaufman* v. *Kaufman*, 223 Mass. 104, 106–107. *Summerfield Co. of Boston* v. *Prime Furniture Co.* 242 Mass. 149, 154–155. *Samson Cordage Works* v. *Puritan Cordage Mills*, 211 Fed. 603, 608. In cases involving registered or common trade marks, the owner of the mark has a property right in it which will be protected against persons seeking to appropriate the same or similar marks to identify their own goods. *Regis* v. *H. A. Jaynes & Co.* 185 Mass. 458, 463. In the case at bar the defendant is not passing off its own goods as those of the plaintiff, because the goods of both the plaintiff and the defendant come from the same source and are identical in kind and quality and in the form of the containers. The plaintiff relies on *A. Bourjois & Co. Inc.* v. *Katzel*, 260 U. S. 689, and insists that the defendant has no

right as against the plaintiff to use the particular merchandise as it is doing.

The facts in the *A. Bourjois & Co. Inc.* case were these: A French face powder manufacturer, doing business in the United States and France, sold its business in the United States to the plaintiff, together with its good will and trade marks. The plaintiff imported face powder from the French manufacturer and, packing it in the United States, put it out in substantially similar packages to those used by the French company. The defendant bought a large quantity of the powder from the French manufacturer, and sold it in the United States in labelled boxes resembling those used by the plaintiff. There were a few slight differences in the labels, but the general appearance of the containers was the same. The court held that the plaintiff, which had built up the business by care in the selection of colors and in packing, was entitled to an injunction, as the defendant had no right to sell goods under a mark which had come to mean to the public the goods of the plaintiff rather than those of the French manufacturer. In cases similar to the case at bar, it has been held, in the Federal courts, that there was neither unfair competition nor infringement of trade marks, because, the function of the trade mark being to denote the authentic product, sales of the authentic product under the name did not constitute a legal wrong. *Apollinaris Co. Ltd.* v. *Scherer*, 27 Fed. 18, 20–21. *Vitascope Co.* v. *United States Phonograph Co.* 83 Fed. 30. In *Prestonettes, Inc.* v. *Coty*, 264 U. S. 359, a purchaser of genuine Coty powder was allowed to state on the label that its powder was made up in part of Coty powder, and the court, speaking through Mr. Justice Holmes (who also wrote the opinion in the *A. Bourjois & Co. Inc.* case) said, at page 368, "A trade mark only gives the right to prohibit the use of it so far as to protect the owner's good will against the sale of another's product as his. *United Drug Co.* v. *Theodore Rectanus Co.*, 248 U. S. 90, 97. There is nothing to the contrary in *Bourjois & Co.* v. *Katzel*, 260 U. S. 689. There the trade mark protected indicated that the goods came from the plaintiff in the United States,

although not made by it, and therefore could not be put upon other goods of the same make coming from abroad. When the mark is used in a way that does not deceive the public we see no such sanctity in the word as to prevent its being used to tell the truth. It is not taboo. *Canal Co.* v. *Clark*, 13 Wall. 311, 327."

It is to be noted, however, that *A. Bourjois & Co. Inc.* v. *Katzel*, 260 U. S. 689, and *Prestonettes, Inc.* v. *Coty*, 264 U. S. 359, are suits to restrain alleged unlawful uses of the plaintiffs' trade marks, registered under the act of Congress, and, unlike the case at bar, were not suits to enjoin "unfair competition" and for incidental damages. The question for decision in these cases is not "how far the court would go in aid of a plaintiff who showed ground for suspecting the defendant of making a dishonest use of his opportunities, but is whether the plaintiff has the naked right alleged to prohibit the defendant from making even a collateral reference to the plaintiff's mark." *Prestonettes, Inc.* v. *Coty*, 264 U. S. 359, 369.

Assuming, as the defendant contends, that this is not a suit for an infringement of patent rights, nor of registered trade marks or trade name rights, but is a suit to enjoin unfair competition and to recover damages incident to such unfair competition, we think that, on the facts admitted by the answer of the defendant and on the facts found by the master, particularly on his finding "that a customer looking at a group of bottles of whiskey on display in a store might readily be deceived by looking at a bottle of 'Royal Flush' into belief that it was the same product which he may have purchased or heard of under the name of 'Four Aces,'" the further finding was warranted that the defendant, at least after it received notice from the plaintiff relative to the sale of "Royal Flush" whiskey, continued to sell "Royal Flush" whiskey with the design to divert to itself trade intended for the plaintiff. *George G. Fox Co.* v. *Glynn*, 191 Mass. 344, 351. *Grocers Supply Co.* v. *Dupuis*, 219 Mass. 576, 578. *Hildreth* v. *D. S. McDonald Co.* 164 Mass. 16, 17. *C. A. Briggs Co.* v. *Na-*

*tional Wafer Co.* 215 Mass. 100, 107. The report sets forth a plain case of a deliberate attempt to appropriate the plaintiff's business.

*Decree affirmed with costs.*