RANDOLPH REFINING CORP. *vs.* HARRY SHAPIRO.

Suffolk. December 7, 1955. — February 2, 1956.

Present: QUA, C.J., WILKINS, SPALDING, WILLIAMS, & WHITTEMORE, JJ.

*Unfair Competition. Trade Mark. Unlawful Interference.*

In a suit by the seller of a sedative compound in capsules which the plaintiff put in bottles labeled "Somni-caps," to enjoin sale by the defendant of the identical compound in capsules in bottles labeled "Somnicaps," a decree dismissing the bill was proper on findings that the plaintiff's alleged trade name was descriptive of the character of the product sold by him and was adopted for that purpose, that such name had not acquired a secondary meaning to the public identifying him as the source of the product, that the origin of the product was inconsequential to the public, that the defendant's bottle, in most of its features, was different from the plaintiff's bottle, and that the similarity of names was accidental and the defendant had no intent to deceive anyone or to injure the plaintiff.

BILL IN EQUITY, filed in the Superior Court on October 21, 1954.

The suit was heard by *Kirk*, J.

*Harold E. Cole*, for the plaintiff.

*Arthur D. Thomson*, (*Louis Steinberg* with him,) for the defendant.

WILKINS, J.   In this bill in equity the plaintiff seeks damages and an injunction against the sale by the defendant of sedatives in the form of bottled capsules bearing the name "Somnicaps." From a decree dismissing the bill the plaintiff appealed. The judge made a report of the material facts found by him. The evidence is not reported.

The plaintiff is a "one-man" corporation. One Mandorf is its president, treasurer, and sole employee. He conducts a small drug business from his home. The defendant is a New England salesman on commission for a New York pharmaceutical company. In 1951 the United States Food and Drug Administration permitted the sale, without a doctor's prescription, of a nontoxic, nonnarcotic sedative, the chemical name of which is methapyrilene hydrochloride. The compound is said to be "an aid for the relief of sleeplessness (insomnia)," and is so advertised by its sellers. Many companies which produce and sell it preceded the plaintiff in the field. Irrespective of the trade name or the manufacturer, the chemical formula and the product are identical.

In February, 1954, the plaintiff, after buying a quantity of capsules of the compound from a manufacturer, put thirty-six capsules in plastic bottles labeled "Somni-caps," and sold them in units of one dozen bottles to druggists. The name was selected, according to Mandorf, because it tended to describe the nature and quality of the commodity, which was in capsule form and was supposed to induce sleep. Mandorf had first consulted a publication of the drug trade, in which a list of "product information" contained items described by names based on the Latin word somnus such as "Somnatabs," "Somnadex," and "Somnitabs."

In May, 1954, the plaintiff filed the trade mark "Somnicaps" with the United States patent office. Publication of the name appeared in the official gazette of that office on November 2, 1954. Within thirty days of publication notice of opposition to a claim may be filed. Neither the filing nor the publication constitutes registration. The cost to the plaintiff of a bottle of thirty-six capsules is eighteen and

one third cents, exclusive of his own labor. The plaintiff sold to the retailer twelve bottles for $12.38. The retailer's price to the consumer was $2.25 a bottle. The plaintiff's sales, which were made largely in this Commonwealth, totaled $12.15 in February, 1954, and mounted more or less steadily to $955.63 in August, 1954. In September there was a marked falling off, and in November the sales were only $84.58. The plaintiff advertised on a small scale, using the phrase, "the original Somni-caps."

In August, 1954, the defendant received for sale from his company an item called "Somnicaps." The spelling is the same as that of the plaintiff's product except for the hyphen. The bottles in which the capsules are sold are the same size as the plaintiff's, but are otherwise readily distinguishable. The plaintiff's bottle is of clear plastic, the defendant's of white nontransparent plastic. The labels differ as to color, lettering, composition, and general appearance. The defendant sold the bottles at $5.40 a dozen. He did not know until August, 1954, when he made a sale to a previous customer of the plaintiff, that it was selling the same commodity. In October, 1954, the defendant received a letter of protest from the plaintiff's lawyer and thereafter made no sales befor the filing of the report of material facts.

The judge found that the plaintiff adopted "Somni-caps" as its trade mark; that such adoption was prior to any sale by the defendant; that the word "Somni-caps" is descriptive of the character of the plaintiff's product and was adopted for that purpose; that the word has not acquired any special significance or secondary meaning as applied to the plaintiff, and is not associated in the public mind to any extent with the plaintiff as the source of the product; that there is not, and cannot be, any deception of the public, as the ingredients of the two products are identical; that the interest of the public is in what the product is and does, and the origin or name is without consequence; that the defendant had no purpose to deceive anyone or to cause injury to the plaintiff; that the similarity of names is purely accidental; and that the sales of the defendant did not come

from any confusion with the plaintiff's product, but were due to his price being substantially less for an identical commodity in a more attractive package marketed by an established pharmaceutical house.

"The chief function of a trade mark is to identify the origin or ownership of the article to which it is affixed or, at least, to indicate that it emanates from the same, though possibly anonymous, source as other goods that have already given the consumer satisfaction." *Broeg* v. *Duchaine,* 319 Mass. 711, 712. Trade mark infringement involves confusion of origin, not confusion of goods. Nims, Law of Unfair Competition & Trade Marks (4th ed.) 671.

The judge found that the word "Somni-caps" is descriptive of the character of the product sold by the plaintiff and was adopted for that purpose. Viewing the alleged trade mark apart from any finding, the result must be the same. The word is reasonably descriptive of a sleep inducing chemical put up in capsules, and would, in our opinion, be so understood by the medical profession, by persons engaged in the pharmaceutical business, by druggists, and by a vast number of the general public having a reasonable education.

The next question, which the plaintiff does not argue, but as to which there is an allegation in the bill, is whether the name has acquired a secondary meaning. *Jenney Manuf. Co.* v. *Leader Filling Stations Corp.* 291 Mass. 394, 398–399. *Gould Engineering Co.* v. *Goebel,* 320 Mass. 200, 204. Nims, Law of Unfair Competition & Trade Marks (4th ed.) § 37. The judge has unequivocally found that it has not acquired such a meaning. This finding cannot be impeached on this record.

The plaintiff argues that the defendant has competed unfairly with the plaintiff by selling goods in a package of the same size and shape which has the same general appearance. This contention is substantially at variance with the explicit findings that only the shape of the bottle was the same, and that everything else, including general appearance, was different. An examination of the exhibits attached to the bill amply sustains the judge's findings.    *Decree affirmed.*