Theodore A. KOUTSOUBOS, Plaintiff,

v.

George CASANAVE; Audio Visual Techniques, Inc., an Illinois corporation; James Regas; and Regas, Frezados & Harp, Defendants.

No. 92 C 1191.

United States District Court,
N.D. Illinois, E.D.

March 4, 1993.

Douglass Gordon Hewitt, Sedgwick, Detert, Moran & Arnold, Chicago, IL, Joseph Edward Edwards, Jr., Aspen, CO, Kendall Ray Meyer, Wilson & McIlvaine, Chicago, IL, for Theodore A. Koutsoubos.

Lorijean G. Oei, Elias N. Matsakis, McBride, Baker & Coles, Thomas P. Ward, Thomas P. Ward, Peter Gregory Frezados, Regas, Frezados & Harp, Chicago, IL, Peter R. Bornstein, Martin D. Buckley, Berenbaum and Weinshienk, P.C., Denver, CO, for George Casanave and Audio Visual Techniques Inc.

Peter Gregory Frezados, Regas, Frezados & Harp, Chicago, IL, Peter R Bornstein, Martin D Buckley, Berenbaum and Weinshienk, P.C., Denver, CO, for Audio Media Productions, Inc.

John Joseph O'Malley, Mary M. Sullivan, Pope, Ballard, Shepard & Fowle, Ltd., Chicago, IL, for James Regas.

Jean Mary Golden, Michael Murphy Tannen, Cassiday, Schade & Gloor, Chicago, IL, for Regas, Frezados & Harp.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Ted Koutsoubos ("Koutsoubos") brings this action against defendants James A. Regas ("Regas") and the law firm of Regas, Frezados & Harp ("RFH") for aiding and abetting breach of fiduciary duty and fraud. Defendants have each filed motions to dismiss Counts VI and VII of plaintiff's Amendment Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the

following reasons, we grant defendants' motions.

## I. Factual Background [1]

Koutsoubos resides and is a citizen of Aspen, Colorado. Koutsoubos and defendant George Casanave ("Casanave"), a citizen of Florida, have been close friends for many years. On several occasions Casanave has stayed with Koutsoubos in Aspen.

Casanave is the majority shareholder and sole officer and director of defendant Audio Visual Techniques, Inc. ("AVT"), an Illinois corporation with its principal place of business in Chicago. RFH is an Illinois partnership whose principal place of business is in Illinois. Regas, also an Illinois resident, is a partner in RFH.

Defendants Regas and RFH have provided legal services to Casanave and AVT for over twenty years. Among their efforts on Casanave's behalf, Regas and RFH represented AVT in connection with AVT's acquisition of Audio Media Productions, Inc. ("AMP") and various loan transactions between AVT and the Harris Bank and Trust of Winnetka ("Harris").

In March 1988, RepublicBank Plano N.A. demanded that AVT pay down its loan with the bank. Unable to arrange for refinancing with RepublicBank, Casanave engaged Regas to set him up with another banking relationship. With Regas' help, Casanave and AVT obtained a $350,000 loan with Harris.

As a condition of the loan, Harris required Regas to guarantee one-third of the credit being extended. Regas agreed, and personally guaranteed approximately $200,000 of the loan. In exchange for his guarantee, AVT was to pay a $3,000 monthly fee to Regas, payable to Regas' children. Shortly thereafter, Casanave executed a Security Agreement on AVT's behalf giving Regas a security interest in the capital stock of an AVT subsidiary, Screenworks.

Late in the summer of 1988, Casanave visited Koutsoubos in Colorado, staying with him at his Aspen home. While there, Casanave approached Koutsoubos to join him in purchasing Audio Media Products ("AMP"), or, alternatively, to lend Casanave $100,000 to make the purchase himself. Casanave represented to Koutsoubos that AVT was a profitable company fully able to pay interest on, and repay, any loan.

In August, Koutsoubos assented to loan Casanave the $100,000. Casanave orally agreed to make quarterly interest payments at the rate of 14%, and a yearly payment of 10% simple interest, and called Regas in Illinois to ask him to draft an agreement providing Koutsoubos with collateral for the loan. Ultimately, the parties agreed that AVT would authorize, issue, and sell Koutsoubos 10,000 shares of preferred stock in AVT in exchange for the $100,000.

On August 14, 1988, AVT acquired AMP for $250,000, paying $50,000 upon sale and signing a promissory note for the remaining $200,000. Regas and RFH represented AVT in both the negotiations and the final sale.

On August 20, without having seen or signed any written agreement, Koutsoubos sent $100,000 to Regas. In early September, Koutsoubos called Regas to inquire about the written agreement. Regas assured him that he would be satisfied with the agreement, and that his interests were safe.

Koutsoubos executed the agreement on September 7, 1988 ("Agreement") in Colorado.[2] In paragraph 2(b) of the agreement, AVT represented and warranted that

"The Corporation has no debts, liabilities or delinquent taxes of any kind, nature or description owing or payable to any individual, firm, federal, state or municipal government except as reflected in the unaudited financial statements of the Corporation which have heretofore been disclosed to Purchaser, undisclosed liabilities, if any, not to exceed $50,000 in the aggregate and current debts and liabilities of the corporation incurred in the ordinary course of business."

---

1. For the purposes of this motion, we will, of course, take plaintiff's well pleaded allegations as true, and will only dismiss if it appears beyond doubt that plaintiff can set forth no facts entitling him to judgment.

2. It is unclear who prepared the Agreement. In one paragraph of the Complaint (¶ 26), Koutsoubos alleges that Regas prepared the Agreement, in another (¶ 27) he avers that Kymn Harp drafted it.

The unaudited financial statements, however, did not reveal certain debts and liabilities, including the $200,000 AVT still owed AMP shareholders and $200,000 in assorted taxes due to the IRS.

Koutsoubos continued to lend Casanave and AVT money. In January, 1989, Koutsoubos wired AVT $25,000. The following month he wired an additional $100,000. With the understanding that this loan was like the earlier one, the parties did not execute a written agreement. Instead, in April, Koutsoubos received two stock certificates for 10,000 and 12,500 shares of AVT preferred stock.

In September, 1990, AVT, represented by RFH, sold Screenworks for $800,000. AVT received $300,000, with a promise of $500,000 from the purchaser. Koutsoubos was never told of the sale.

In December, 1990, under pressure from Harris pay off its loan, AVT sought a new credit line with Western Springs. At the time, Casanave owned approximately one third of the outstanding shares of Western Springs' parent company, Western Springs BancCorp, for which RFH served as general corporate attorneys.

In February, 1991, Western Springs established a $500,000 line of credit for AVT, collateralized by all issued and outstanding stock in AVT, including the stock purchased by Koutsoubos under the Agreement. AVT did not disclose this arrangement to Koutsoubos.

When Koutsoubos attempted to redeem his shares of preferred AVT stock, Casanave refused to honor the request. Subsequently, Koutsoubos filed a complaint, in Colorado state court, charging Casanave and AVT with fraud and breach of fiduciary duty. Defendants then removed the diversity action to the Colorado District Court, which transferred the action pursuant to a forum selection clause in the Agreement.[3]

3. The choice of law and forum selection clause reads as follows:
This agreement shall [be] governed, construed and interpreted in accordance with the laws of the State of Illinois and, where applicable, the laws of the United States of America. Cook County, Illinois and the Northern District of Illinois, shall be deemed the proper venue for

In his Amended Complaint, Koutsoubos alleges that Casanave and AVT concealed AVT's actual financial condition from him in order to induce the $100,000 loan. He further alleges that Regas and RFH knew, or should have known, of the concealment, the sale of Screenworks, and the pledging of AVT stock to Western Springs and therefore aided and abetted the breach of fiduciary duty and fraud.

## II. Discussion

The first question before the Court is whether Illinois or Colorado law applies to Koutsoubos' charges against Regas and RFH.[4] The parties tender a variety of arguments on this topic. Defendants contend that the choice of law provision contained in the Agreement establishes that Illinois law should govern. Koutsoubos challenges this contention, arguing first that, due to its narrow phrasing, the choice of law provision only governs actions sounding in contract, not tort. He further maintains that even if the choice of law provision properly applies to a tort action, neither Regas nor RFH were parties to the Agreement, hence, the provision does not apply to an action brought against them. Although these arguments raise interesting questions of law, we need not address them here, since a straight choice of law analysis dictates that Illinois law govern Counts VI and VII.

### A. Choice of Law Analysis

■ Because this case has been transferred to this Court, we must first determine whether to employ the choice of law rules of this forum, or the transferee forum. A federal court may transfer a case pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses, or pursuant to 28 U.S.C. § 1406(a) in the event that an action lay in an improper forum. The choice of law

any action brought to interpret or enforce this agreement or otherwise arising herefrom.

4. A different law may apply to a count arising out of contract than a count sounding in tort. With that in mind, we direct our attention exclusively to determining which law should apply to Counts VI and VII.

rules to be applied by the transferee court depends upon the basis for the transfer. If the case is transferred under § 1404(a), the transferee court must apply the choice of law rules of the transferor court, at least where the defendant moves for transfer. However, where an action was improperly filed in the transferor court, the transferee court should apply its own state's choice of law rules rather than those of the transferor's state.[5]

■ Here, on the strength of the Agreement's forum selection clause, Judge Sparr transferred this case for improper venue. Accordingly, we shall apply Illinois' choice of law rules in determining whether Illinois or Colorado law should apply to Counts VI and VII.

Illinois has adopted the "most significant contacts" approach of the *Restatement (Second) of Conflict of Laws* § 145 in resolving conflicts of law. *Ingersoll v. Klein*, 46 Ill.2d 42, 262 N.E.2d 593 (1970). This test requires a court to evaluate the interests of the various states in the litigation and to determine which state holds the most significant relationship to the case at hand.[6] (914 F.2d 976, 977). In tort actions, courts consider the place of the alleged tortious act, the place of injury, and the domicile and place of business of the parties. Among these factors, the place of injury is typically given the most weight, although courts will readily overlook this factor if another state has a more compelling relationship to the events. *Vantassell–Matin v. Nelson*, 741 F.Supp. 698, 703 (N.D.Ill.1990) (*citing Kaczmarek v. Allied Chemical Corp.*, 836 F.2d 1055, 1058 (7th Cir.1987).

At first blush, it appears that Illinois and Colorado have competing interests in this controversy. Upon closer examination, however, the conflict is illusory. Although the injury in this case was felt in Colorado, and that state has a presumptive interest in ensuring compensation for torts impacting its

citizens, it is not clear that Colorado recognizes a cause of action for the conduct complained of here. It is undisputed that Colorado has never recognized the tort of aiding and abetting a fraud. Moreover, while the Tenth Circuit has ruled that Colorado likely would recognize the tort of aiding and abetting a breach of fiduciary duty, the state itself has never acknowledged such a cause of action. *See Q.E.R., Inc. v. Hickerson*, 880 F.2d 1178 (10th Cir.1989). Colorado, then, has a tenuous interest, at best, in Koutsoubos' recovery for the alleged conduct.

Opposite this stands Illinois' interest in limiting recoveries awarded against its citizens. Here, Illinois citizens are being sued for acts occurring entirely in Illinois. These acts, moreover, do not constitute an actionable wrong in this state. Illinois, then, has a unique interest in limiting recovery against Regas and RFH.

In the face of Colorado's illusory interest in this action, Illinois' concrete interest takes precedence. Thus, we will apply Illinois law to the charges at hand.

### B. Illinois Law

■ Illinois has never recognized the tort of aiding and abetting a breach of a fiduciary duty. *See Cenco, Inc. v. Seidman & Seidman*, 686 F.2d 449, 452 (7th Cir.1982) ("There is no tort of aiding and abetting under Illinois law or, so far as we know, the law of any other state."); *Wieboldt Stores, Inc. v. Schottenstein*, No. 87 C 8111, 1989 WL 18112, 1989 U.S.Dist. LEXIS 10124 (N.D.Ill.1989) (in a suit against a corporation's attorneys, court found that there is no cause of action for aiding and abetting a breach of fiduciary duty under Illinois law and, further, that aiding and abetting liability is uniquely inapplicable to breaches of fiduciary duty, since that tort involves a special relationship between the injured party and the primary tortfeasor). Thus we dismiss Count VI of the complaint against both Regas and RFH.

---

**5.** The reason for this is obvious. If the state law of the original forum was applied after transfer for improper venue, plaintiffs would be encouraged to shop around for the forum with the most favorable choice of law rules, confident that even if the case was transferred, they would still gain the benefit of the forum's laws. *See Martin v. Stokes*, 623 F.2d 469, 472 (6th Cir.1980); *Ellis v. Great Southwestern Corp.*, 646 F.2d 1099 (5th Cir.1981).

**6.** The most significant relationship is not necessarily characterized by the greatest number of contacts, but by the weight of the interests at stake. *Vantassell–Matin v. Nelson*, 741 F.Supp. 698 (N.D.Ill.1990) Accordingly, the test, as applied in Illinois, might be described as approximating the "interest analysis." *Id.*

Illinois has also never recognized a tort for aiding and abetting a fraud. *Renovitch v. Kaufman,* 905 F.2d 1040, 1049 (7th Cir.1990) ("No separate cause of action for aiding and abetting a fraud exists under Illinois law."); *Bankard, et al v. First Carolina Communications,* No. 89 C 8571, 1992 WL 3694, 1992 U.S.Dist. LEXIS 53 (N.D.Ill.1992) (court acknowledged that Illinois does not recognize a tort for aiding and abetting a fraud). Accordingly, we dismiss Count VII against both defendants.[7]

### III. Conclusion

For the foregoing reasons, we grant the defendants' respective motions to dismiss Counts VI and VII. It is so ordered.

---

**7.** Illinois does recognize that a party who (1) makes a false statement, (2) knows the falsity of the statement, (3) intends to induce action by another party, (4) actually induces action in reliance on the false statement, and (5) causes injury, participates in a fraud. *Renovitch,* 905 F.2d at 1049. Koutsoubos, however, has not alleged that either Regas or RFH committed fraud directly, nor is it clear that an attorney or law firm is liable for misrepresentations which may exist in an Agreement drafted on behalf of a client.