**ABBOTT LABORATORIES, Plaintiff,**

v.

**NUTRAMAX PRODUCTS, INC., Defendant.**

No. 92 C 6327.

United States District Court, N.D. Illinois, E.D.

Feb. 22, 1994.

---

Kenneth David Greisman, Abbott Laboratories, Abbott Park, IL, Robert Francis

Ward, D'Ancona & Pflaum, Chicago, IL, Thomas C. Morrison, Patterson, Belknap, Webb & Tyler, New York City, for plaintiff.

Robert Leslie Byman, Daniel S. Goldman, Jenner & Block, Chicago, IL, Patricia Hatry, Howard Weingrad, Davis & Gilbert, New York City, for defendant.

## OPINION AND ORDER

NORGLE, District Judge:

Before the court is defendant NutraMax Products, Inc.'s ("NutraMax") motion for judgment on the pleadings as to counts II and III of plaintiff Abbott Laboratories' ("Abbott") second amended complaint pursuant to Fed.R.Civ.P. 12(c). The motion is granted for the reasons stated below.

## FACTS

Abbott, an Illinois corporation with its principal place of business in North Chicago, Illinois, manufactures prescription pharmaceuticals, medical devices, and other health care products. Among the products Abbott manufactures is a pediatric oral electrolyte solution called "Pedialyte." Abbott sells Pedialyte in distinctive thirty-two ounce transparent bottles. The bottles are square with three and one-half inch side panels. Coursing around the four sides of the bottles immediately above and beneath the wraparound label are two sets of visible indentations. As a forerunner to the bottles at issue, Abbott had also marketed its Pedialyte in an I–V bottle form for use in hospitals and doctors' offices. Although its similarly designed I–V bottle once enjoyed protection under federal patent law as a design patent, Abbott's patent for that bottle has since expired.

NutraMax is a Delaware corporation with its principal place of business in Glouchester, Massachusetts. NutraMax sells a competing pediatric oral electrolyte solution called "Pediatric Electrolyte." NutraMax markets its product in a bottle and with labeling that Abbott charges infringes upon its trade dress.

Abbott's second amended complaint alleges claims for trade dress infringement in violation of § 43(a)(1) of the Lanham Act, 15 U.S.C. § 1125(a)(1), dilution under state law, and misappropriation under state law. In response to the amended complaint, NutraMax filed the present motion for judgment on the pleadings as to counts II and III.

## DISCUSSION

■■■ A Rule 12(c) motion is governed by the same standard as a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Craigs, Inc. v. General Elec. Capital Corp.*, 12 F.3d 686 (7th Cir. 1993). For purposes of considering a motion for judgment on the pleadings, therefore, all of the nonmovant's well pleaded allegations are taken as true, and all contravening assertions of the movant are taken as false. *Thomason v. Nachtrieb*, 888 F.2d 1202, 1204 (7th Cir.1989). This is also true for the inferences to be drawn from those allegations. *Id.* Because a Rule 12(c) motion seeks to determine the merits of the controversy and reach judgment in the case, the court should be reluctant to grant the motion unless it is clear the merits of the claim can be fairly decided summarily. *See* 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE § 1369.

■■■ Abbott's primary claim is one for trade dress infringement. Under federal trademark law, product configurations and trade dress can enjoy trademark protection. *Kohler Co. v. Moen Inc.*, 12 F.3d 632 (7th Cir.1993); *Abbott Lab. v. Mead Johnson & Co.*, 971 F.2d 6, 20–22 (7th Cir.1992). A party who owns a protectible trade dress therefore has the ability to force subsequent entrants into the market to select a trade dress that avoids a likelihood of consumer confusion as to the source or sponsorship of the product. *Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145, 1155 (7th Cir.1994) (citing *Forum Corp. v. Forum Ltd.*, 903 F.2d 434, 439, 440 (7th Cir.1990)).

■■■ As a supplement to federal trademark law, certain states have implemented anti-dilution laws, both statutorily and by case development. Under these anti-dilution laws, a party can prevent others from engaging in conduct that "dilutes" its trademarks; in other words, conduct that diminishes the

mark's distinctiveness, effectiveness, and value by damaging the positive associations attached to the trademark. *See* 3A R. CALLMANN, UNFAIR COMPETITION, TRADEMARKS & MONOPOLIES § 21.11, at 33–34 (4th ed. 1981); 2 J. MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 24.13, at 215 (2d ed. 1984). Dilution does not require a showing of likelihood of consumer confusion and is thus understood as providing greater protection for trademark owners. *See* Shire, *Dilution Versus Deception—Are State Antidilution Laws an Appropriate Alternative to the Law of Infringement?*, 77 TRADEMARK REP. 273 (1987).

■ Abbott seeks protection against dilution of its trade dress under Massachusetts law in count II of its complaint. *See* MASS. GEN.L. ch. 110B, § 12. Nonetheless, NutraMax asserts that Illinois law governs the viability of Abbott's dilution claim. *See* 765 ILCS 1035/15. Because there exists a conflict between Illinois law and Massachusetts law on the anti-dilution claim, *compare EZ Loader Boat Trailers, Inc. v. Cox Trailers, Inc.*, 746 F.2d 375, 380 (7th Cir.1984) (commercial competitors cannot sue under the Illinois anti-dilution statute); *Filter Dynamics Int'l v. Astron Battery, Inc.*, 19 Ill.App.3d 299, 311 N.E.2d 386, 398–99 (1974) (same) *with Pignons S.A. de Mecanique de Precision v. Polaroid*, 657 F.2d 482 (1st Cir.1980) (commercial competitors can sue under the Massachusetts anti-dilution statute), the court must first resolve the choice-of-law issue.[1]

■ Illinois follows the "most significant contacts" approach of the RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 in resolving disputes over the choice of law in a tort action. *Ingersoll v. Klein*, 46 Ill.2d 42, 262 N.E.2d 593 (1970). This approach requires

the court to determine which state possesses the most significant relationship to the issues involved after evaluating the contacts the various states have with the litigation. *Koutsoubos v. Casanave*, 816 F.Supp. 472, 475 (N.D.Ill.1993); *see Palmer v. Beverly Enters.*, 823 F.2d 1105, 1107 (7th Cir.1987); *Lyons v. Turner Constr. Co.*, 195 Ill.App.3d 36, 141 Ill.Dec. 719, 721–722, 551 N.E.2d 1062, 1064–65 (1990). In tort actions, the relevant contacts include the location where the tortious act took place, the place of injury, and the domicile and place of business of the parties. *Koutsoubos*, 816 F.Supp. at 475. The most significant factor is the place of injury. *Id.*

■ Infringement of intellectual property rights sounds in tort. *Habitat Wallpaper & Blinds v. K.T. Scott Ltd.*, 807 F.Supp. 470, 473 (N.D.Ill.1992). The place of injury usually defines the locus of a cause of action for trade dress infringement and unfair business practices; and the damage to intellectual property rights is usually realized where the owner of the protected rights suffers the damage. *Id.* Abbott's principal place of business is in Illinois and will thus realize the dilution or misappropriation of its trade dress in Illinois. In addition, although NutraMax's Pediatric Electrolyte originates from Massachusetts, Abbott's claims are based in part on the sale of the Pediatric Electrolyte in this district. The division through which Abbott manufactures and sells its Pedialyte is in Ohio,[2] but Pedialyte is distributed nationally. Accordingly, Illinois has the most significant relationship to Abbott's claims and its unfair competition laws will apply.

■ The application of Illinois law dooms Abbott's dilution claim.[3] Trademark

---

1. Abbott originally brought its misappropriation claim pursuant to the common law of Illinois. Yet in its response to NutraMax's motion for judgment on the pleadings, which argues that Illinois does not recognize misappropriation under the present circumstances, Abbott argues application of Massachusetts law. This conflict will thus be resolved along with the conflict concerning the dilution claim in count II.

2. Ohio law also requires that the plaintiff and defendant in a dilution claim not be competitors.

*Worthington Foods, Inc. v. Kellogg Co.*, 732 F.Supp. 1417, 1457–58 n. 94 (S.D.Ohio 1990); *see also Ameritech, Inc. v. American Info. Technologies Corp.*, 811 F.2d 960, 965 (6th Cir.1987) (dilution is cognizable where one uses trademark in entirely unrelated business).

3. It is also unclear whether Abbott would fair much better under Massachusetts law. The Massachusetts statute provides, "Likelihood of ... dilution of the distinctive quality of a ... mark valid at common law, shall be a ground for

dilution is recognized in Illinois by the Illinois Anti–Dilution Act, 765 ILCS 1035/15. To succeed on a dilution claim under Illinois's statute, a plaintiff must demonstrate that its mark is distinctive and that the defendant's use of the same or similar mark dilutes that distinctiveness. *Eveready Battery Co., Inc. v. Adolph Coors Co.*, 765 F.Supp. 440, 451 (N.D.Ill.1991). The Act provides additional protection to trademark owners by preventing the disparagement or erosion of their marks through use by third parties on non-confusing, non-competing products. *Id.* (citing *Ringling Bros.—Barnum & Bailey Combined Shows, Inc. v. Celozzi—Ettelson Chevrolet, Inc.*, 855 F.2d 480, 482 (7th Cir.1988)). It is well settled, however, that commercial competitors cannot recover under Illinois's anti-dilution statute. *EZ Loader*, 746 F.2d at 380; *Filter Dynamics*, 311 N.E.2d at 398–99. Abbott's claim for dilution against NutraMax, a competitor, must therefore fail.

■ Count III is a claim for unlawful misappropriation of a valuable asset in violation of the common law. Illinois's common law doctrine of misappropriation has been generally limited to the misappropriation of valuable business information. *See Nash v. CBS, Inc.*, 704 F.Supp. 823, 835 (N.D.Ill. 1989) (systematic appropriation of valuable stored information), *aff'd*, 899 F.2d 1537 (7th Cir.1990); *Board of Trade of the City of Chicago v. Dow Jones & Co.*, 98 Ill.2d 109, 74 Ill.Dec. 582, 456 N.E.2d 84 (1983) (misappropriation of Dow Jones index and averages). Furthermore, an esteemed commentator in the field of intellectual property and unfair competition law has observed,

The misappropriation doctrine cannot be used in ordinary trademark infringement cases as shortcuts around the trademark law's standard of protection. That is, one

cannot dispense with the carefully construed requirements for trademark protection by blithely claiming that defendant 'misappropriated' some symbol of plaintiff which may or may not be capable of trademark protection. . . .

1 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 10.-34[2] (3rd ed. 1992). Accordingly, NutraMax's use of a product configuration which allegedly trades off the good will established by Abbott's use of a similar design cannot be rectified through a state law claim for misappropriation.

In sum, NutraMax is entitled to judgment as a matter of law on both counts II and III of Abbott's second amended complaint. Illinois law does not extend its protection under the anti-dilution statute to competitors and does not recognize a claim for misappropriation of trade dress where federal trademark law, embodied in the Lanham Act, provides a remedy.

## CONCLUSION

For the above stated reasons, NutraMax's motion for judgment on the pleadings as to counts II and III of Abbott's second amended complaint is granted.

IT IS SO ORDERED.

---

injunctive relief notwithstanding . . . the absence of confusion as to the source of goods or services." MASS.GEN.L. ch. 110B, § 12. Massachusetts may not recognize trade dress as a protectible mark at common law. Further, no case in Massachusetts has granted relief under the anti-dilution statute against dilution of a trade dress, and the Massachusetts anti-dilution statute has been limited to the protection of only the strongest trademarks or product names. *S.S. Kresge v. United Factory Outlet, Inc.*, 598 F.2d 694, 697 (1st Cir.1979). Abbott emphasizes that the Su-

preme Judicial Court of Massachusetts has, in cases involving a product's overall packaging and labeling, analyzed a plaintiff's trade dress as a possible mark. *See, e.g., California Wine & Liquor Corp. v. William Zakon & Sons*, 297 Mass. 373, 8 N.E.2d 812, 815 (1937). Other cases have at least discussed dissimilarities in product configuration and trade dress when addressing likelihood of confusion. *See, e.g., Randolph Refining Corp. v. Shapiro*, 333 Mass. 506, 131 N.E.2d 770 (1956). The issue, however, need not be resolved.