ST. CHARLES RIVERFRONT STATION, INC., a Missouri Corporation, and Station Casinos, Inc., a Nevada Corporation, Plaintiffs,

v.

EMPRESS CASINO JOLIET CORPORATION, an Illinois Corporation, Defendant.

No. 97 C 7008.

United States District Court, N.D. Illinois, Eastern Division.

May 1, 1998.

Michael D. Sher, Neal, Gerber & Eisenberg, Chicago, IL, Leonard Rose, Jed D. Reeg, Rose Brouillette & Shapiro, P.C., Kansas City, MO, for St. Charles Riverfront Station, Inc.

Dean A. Dickie, Michael John Lyle, D'Ancona & Pflaum, Chicago, IL, for Empress Casino Joliet Corp.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The plaintiffs, St. Charles Riverfront Station, Inc., ("St.Charles"), and Station Casinos, Inc. ("Station"), sued the defendant, Empress Casino Joliet Corporation ("Empress"), for tortious interference of contract. Empress moves to dismiss the claim. For the following reasons, the motion is granted.

### Background

St. Charles is a Missouri Corporation with its principal place of business in St. Charles, Missouri. Empress is an Illinois corporation with its principal place of business in Joliet, Illinois. Station is a Nevada corporation.[1] St. Charles states that two of its employees, Monique Threadgill, Director of Marketing, and Thomas Quinlan, Purchasing Manager, signed three-year contracts of employment. St. Charles alleges that Empress intentionally and unjustifiably interfered with its contractual rights by inducing Ms. Threadgill and Mr. Quinlan to breach their employment contracts. (Comp.¶¶ 7, 10).

### Choice of Law

■ The parties dispute which jurisdiction's law should govern the instant dispute. St. Charles argues that Illinois law controls while Empress argues that Missouri law governs.[2]

■ The law used in a diversity jurisdiction case is determined by looking to the conflict-of-law rules of the state in which the federal court sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In a tort action, Illinois uses the "most significant contacts" approach of the Second Restatement to resolve choice of law disputes. *Abbott Laboratories v. Nu-*traMax Products, Inc., 844 F.Supp. 443, 446 (N.D.Ill.1994) (citation omitted). "This approach requires the court to determine which state possesses the most significant relationship to the issues involved after evaluating the contacts the various states have with the litigation." *Id.* Among the factors a court should consider are "(1) the place of injury and the place where the conduct causing the injury occurred; (2) the domicile of the parties; (3) the place of incorporation in cases involving incorporation; (4) the place of business of the parties; and (5) the place where the parties' relationship, if any, is centered." *Thera–Kinetics, Inc. v. Managed Home Recovery, Inc.*, No. 95 C 3821, 1997 WL 610305, at *3 (N.D.Ill. Sept.29, 1997). The most important factors are the place where the injury occurred and the place of the conduct causing the injury. *Id.; Abbott Lab.*, 844 F.Supp. at 446.

St. Charles is a Missouri corporation with its principal place of business in Missouri. Empress is an Illinois corporation with its principal place of business in Illinois. The domicile of the parties, the place of incorporation, the place of business of the parties, and the place of the parties' relationship does not favor either Illinois or Missouri.[3] St. Charles' principal place of business is Missouri and to the extent it is injured by Empress' alleged tortious interference, it feels that effect in Missouri. Thus, the place of injury favors Missouri law.[4]

St. Charles speculates that the conduct causing the injury occurred in Illinois because Ms. Threadgill and Mr. Quinlan were probably brought to Illinois to interview and were there induced to breach their employment contracts. It is equally probable that

1. Station was added as a party plaintiff on February 23, 1998, after briefing on the motion to dismiss was complete. The addition of Station moots Empress' argument that there is not a proper plaintiff to bring a claim for tortious interference of contract with Thomas Quinlan.

2. Both parties agree that the choice of law provision in the employment contracts does not control the current dispute.

3. While Ms. Threadgill and Mr. Quinlan currently have contacts with Empress in Illinois, at the time of the alleged tortious interference both employees had contacts with St. Charles in Missouri. It is the latter relationship with which Empress allegedly interfered.

4. St. Charles argues it also suffered an injury in Illinois because Ms. Threadgill and Mr. Quinlan took valuable trade secrets to Empress. There is no allegation in the complaint or evidence in the record regarding misappropriation of trade secrets. Regardless, any harm St. Charles suffers from misappropriation of trade secrets will affect its business in Missouri. *Abbott Laboratories*, 844 F.Supp. at 446.

representatives of Empress made trips to Missouri to interview and discuss employment with Ms. Threadgill and Mr. Quinlan. The factors in this case are, for the most part, evenly spread among Illinois and Missouri. The most important factor, however, the place of injury, favors Missouri. Accordingly, Missouri law will govern the dispute. *See Straka v. Francis,* 867 F.Supp. 767, 774 (N.D.Ill.1994) (finding that where an employment agreement and relationship formed in a state is allegedly interfered with, the "most significant contacts" test favors applying the law of that state).

### Tortious Interference with Contract

■ To prove a claim for tortious interference of contract, St. Charles must show "(1) a contract or a valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing a breach of the contract or relationship; (4) absence of justification; (5) damages resulting from defendant's conduct." *Community Title Co. v. Roosevelt Fed. Sav. & Loan Ass'n,* 796 S.W.2d 369, 372 (Mo.1990) (en banc). Empress argues that St. Charles' complaint should be dismissed because it has not properly pled "absence of justification."

■ "Absence of justification is the absence of any legal right on the part of the defendant to take the actions about which a plaintiff complains." *SSM Health Care, Inc. v. Deen,* 890 S.W.2d 343, 346 (Mo.Ct.App. 1994). "A defendant is justified in inducing a contract's breach, unless the defendant uses improper means to induce the breach." *Schott v. Beussink,* 950 S.W.2d 621, 628 (Mo. Ct.App.1997). "[I]mproper means are those that are independently wrongful, such as threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade, or any other wrongful act recognized by statute

or the common law." *Nazeri v. Missouri Valley College,* 860 S.W.2d 303, 317 (Mo. 1993) (en banc). Under Missouri law, the "absence of justification" element is an "indispensable" part of tortious interference with contract. *Institutional Food Mktg. Associates, Ltd. v. Golden State Strawberries, Inc.,* 747 F.2d 448, 454 (8th Cir.1984) (quotation omitted).

■ St. Charles argues it sufficiently pled "absence of justification" by alleging Empress "unjustifiably interfered" with its contractual rights. (Comp.¶¶ 7, 10). "A complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." *Palda v. General Dynamics Corp.,* 47 F.3d 872, 875 (7th Cir.1995). In considering Missouri's interference with contract tort the Eighth Circuit noted

> [t]he establishment of a prima facie case requires more than the allegation that the defendant acted without justification. In order to state a cause of action, it is necessary that facts be alleged from which it could be found that the interference was not justified.

*Golden State Strawberries, Inc.,* 747 F.2d at 454. St. Charles' complaint does not allege Empress used "improper means" to induce either Ms. Threadgill or Mr. Quinlan to leave St. Charles. Instead, the complaint consists of a single, conclusory allegation without any factual support. St. Charles argues that only through discovery can it determine whether Empress used an unjustified means to interfere with contracts. This argument does not alter St. Charles' burden to provide some factual support for its claim. Rather, it suggests St. Charles may have filed this suit without a good faith basis to believe Empress committed a tort.[5]

---

5. Empress also argues St. Charles' complaint fails to allege a valid and enforceable contract. Empress argues Ms. Threadgill's and Mr. Quinlan's contracts are invalid personal services contracts because the contracts require continued employment against Ms. Threadgill's and Mr. Quinlan's will. Both Ms. Threadgill and Mr. Quinlan signed three year employment contracts. St. Charles alleges Ms. Threadgill and Mr. Quinlan breached their contracts by leaving before the employment period expired. Empress is cor-

rect that St. Charles cannot seek specific performance based on a breach of a personal services contract. *Richardson v. Ozark Airlines,* 270 S.W.2d 8, 10 (Mo.1954). But this does not render the employment contracts invalid or prohibit a suit for money damages against Empress or Ms. Threadgill or Mr. Quinlan. *Vondras v. Titanium Research & Dev. Co.,* 511 S.W.2d 883, 886 (Mo.Ct.App.1974) (finding the time period for employment set forth in a contract bound both the employer and the employee and either party

*Conclusion*

For the foregoing reasons, Empress' motion to dismiss is granted.

could recover damages for breach of the contract). Empress' argument is without merit.