**Lawrence J. HICKEY, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**GREAT WESTERN MORTGAGE CORPORATION, Defendant.**

No. 94 C 3638.

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 8, 1994.

**606**

Daniel A. Edelman; Cathleen M. Combs; O. Randolph Bragg; Tara L. Goodwin; J. Eric Vander Arend; Michelle A. Weinberg, Edelman & Combs, Chicago, IL, Charles M. Baird, Miami Beach, FL, Edward K. O'Brien, Needham, MA, for plaintiff.

Steven M. Levy, Mary L. Mills, Sonnenschein Nath & Rosenthal, Chicago, IL, for defendant.

## *MEMORANDUM OPINION AND ORDER*

CONLON, District Judge.

Lawrence J. Hickey, on behalf of himself and all others similarly situated, sues Great Western Mortgage Corporation ("Great Western") for violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* (Count I), and for unfair and deceptive trade practices under the California Business and Professions Code §§ 17200, 17500 (Count II). The violations stem from allegedly improper financial disclosures in consumer credit transactions. Hickey moves to certify the class. Fed.R.Civ.P. 23.

### *BACKGROUND*

In ruling on a motion for class certification, the allegations of the complaint are taken as true. *Allen v. Isaac*, 99 F.R.D. 45, 49 (N.D.Ill.1983). Great Western lends money to consumers in exchange for finance charges. Great Western's principal place of business is in California, and it has engaged in more than 25 consumer credit transactions in each of the past several years. On August 6, 1993, Hickey and Great Western refinanced the mortgage on Hickey's family home in Massachusetts. Because Great Western was subject to TILA and various state consumer protection laws, it was required to provide Hickey with accurate disclosures of the "finance charge" and "amount financed" for the loan. At issue are two fees imposed by an attorney at the closing: a $42 Federal Express charge and a $25 discharge service fee. Hickey alleges that Great Western failed to include these charges in the "finance charge" and instead included them in the "amount financed" figure, thereby rendering Hickey with inaccurate disclosures of both the "finance charge" and the "amount financed."

In addition, Hickey alleges that Great Western prepared its truth-in-lending disclosures according to standardized procedures, and that it was the policy and practice of Great Western to exclude from the "finance charge" and include in the "amount financed" figure (1) charges for the transportation of documents and checks, such as Federal Express fees; and (2) charges for Great Western's overhead expense in obtaining releases of prior encumbrances, such as the discharge service fee. As a result, Hickey sues on behalf of a class that was also provided with inaccurate disclosure statements with respect to these fees, a class that Hickey estimates to be in the thousands. Hickey proposes the following class definition:

> The class consists of all persons, located anywhere within the United States, who satisfy the following criteria:
>
> (a) They entered into a transaction with Great Western which Great Western documented as a consumer credit transaction, by providing Truth in Lending disclosures.
>
> (b) Great Western, when making Truth in Lending disclosures, excluded from the "finance charge," and included in the "amount financed," charges for the transportation of documents and checks, such as courier fees, and/or charges for services relating to obtaining and recording releases of prior encumbrances, such as the discharge service fees.

The class period is one year prior to the filing of this complaint for purposes of Count I and three years for purposes of Count II.[1]

Hickey's motion to certify the class is presently before the court.

## DISCUSSION

In order to maintain a class action, Hickey must satisfy the requirements of Federal Rule of Civil Procedure 23(a) and (b). *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 596 (7th Cir.1993). Rule 23(a) requires that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a). If these prerequisites are satisfied, the court must determine whether one of the standards of Rule 23(b) is met. *Patrykus v. Gomilla,* 121 F.R.D. 357, 360 (N.D.Ill.1988). Here, Hickey looks to Rule 23(b)(3) and asserts that questions of law or fact common to the class predominate over questions affecting only individual members. In addition, Hickey claims that a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Fed.R.Civ.P. 23(b)(3).

■■■ In assessing the certification petition, the court assumes the allegations in the complaint are true and does not examine the merits, *Allen,* 99 F.R.D. at 49, although "[t]he boundary between a class determination and the merits may not always be easily discernible." *Eggleston v. Chicago Journeymen Plumbers' Local Union,* 657 F.2d 890, 895 (7th Cir.1981); *accord General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). Failure to meet any one of the requirements of Rule 23 precludes certification of the class. *Patterson v. General Motors Corp.,* 631 F.2d 476, 480 (7th Cir.1980). Nevertheless, the Rule 23 standards should be read in light of Congress' vision of the class action as "necessary to elevate truth-in-lending lawsuits from

the ineffective 'nuisance category' to the type of suit which has enough sting to insure that management will strive with diligence to achieve compliance." *Bantolina v. Aloha Motors,* 419 F.Supp. 1116, 1120 (D.Haw.1976) (quoting Federal Reserve Board, 1972 Annual Report on Truth in Lending). Hickey bears the burden of showing that certification is proper. *Trotter v. Klincar,* 748 F.2d 1177, 1184 (7th Cir.1984).

Hickey estimates that there are thousands of putative class members. Great Western does not contest this formulation or otherwise argue numerosity. Accordingly, the court finds that Hickey has established numerosity. The other requirements of Rule 23 are considered in turn.

## I. *Adequacy*

■■■ Great Western first contends that Hickey is not an adequate class representative. Rule 23(a)(4) requires that the class representative fairly and adequately protect the interests of the class. This inquiry is composed of two parts. First, the court considers whether the named plaintiff's counsel is competent to represent the interests of the class adequately and whether counsel is able to prosecute the claim effectively. Second, the court must look at the class representative and determine whether he will adequately protect "the different, separate, and distinct interest of the class members." *See Retired Chicago Police Ass'n,* 7 F.3d at 598 (quoting *Secretary of Labor v. Fitzsimmons,* 805 F.2d 682, 697 (7th Cir.1986)). The class representative must vigorously pursue the litigation on behalf of the class and be free of significant interest conflicts with his class members. *Retired Chicago Police Ass'n,* 7 F.3d at 598; *Fry v. UAL Corp.,* 136 F.R.D. 626, 634 (N.D.Ill.1991).

Great Western does not challenge the competence or extensive class action experience of Hickey's counsel. *See* Pl.Ex. F. Instead, Great Western alleges that Hickey will be unable to represent the interests of the class effectively. First, Great Western claims that Hickey has "abdicated all control of this litigation to his attorneys." Def.Resp. at 3. To this end, Great Western cites Hickey's 60–70

---

1. Great Western does not challenge Hickey's pro-   posed class definition.

hour work week and contends that he will not have time to pursue the litigation vigorously. Great Western also alleges that Hickey has not read all of the filings in the case, has not investigated his claims, and that Hickey's knowledge of his claim came "only through discussions with his attorney." Def. Resp. at 5. Second, Great Western contends that Hickey is a poor class representative because he is insufficiently familiar with the facts of the case.

Great Western's claims are conclusively without merit, apparently constructed by cherry-picking portions of Hickey's deposition testimony. A review of Hickey's testimony in context suggests that he will be able to represent a class adequately. Hickey is an educated person with substantial experience in the ways of business, including stints as an accountant, comptroller, and chief financial officer of corporations. Hickey Dep. 7–9. Having met his attorney during the course of previous unrelated litigation, Hickey approached the attorney and affirmatively asked him to review Hickey's Great Western mortgage transaction for any problems. *Id.* at 12. The attorney discovered possible overcharges imposed at closing and, after discussion, Hickey decided to pursue his claim; Hickey and his attorney then contacted Edelman & Combs, who currently represent Hickey in this case. *Id.* at 12–13. Hickey has read the complaint, understands the substance of the counts, and knows the procedural posture of the case. *Id.* at 17–18.

In addition, Hickey specifically stated that he takes a proactive role in dealing with his attorneys, "ask[ing] what this particular document means and, you know, what are the impacts, positive and negative, things of that nature." *Id.* at 19. Hickey specifically denied that he would be satisfied with the case as long as his attorneys were satisfied. *Id.* He has had conversations and meetings with his attorneys on several occasions for a total of several hours, *id.* at 15–16, and Great Western makes no showing that this is inadequate. Hickey has also personally investigated the basis for his claim. Aside from initiating his attorney's examination of Great Western's closing documents for improprieties, Hickey testified that he personally took

the truth-in-lending estimate from Great Western, compared it to what he actually paid, and determined that other charges had been added into the total. *Id.* at 24. Moreover, Hickey demonstrates a sophisticated understanding of his duties as a class representative:

> My responsibilities [as a class representative] I·guess as I see them would be that, one, to make sure that the attorneys are doing a good job in bringing the litigation to court; that they are doing it on a timely basis; that they are, in fact, representing the class action or the people involved with this class action fairly; and that they make myself as plaintiff, the named plaintiff I guess, aware of any offers of settlement, if there are any; and I have the responsibility to not try to settle this thing in my behalf so that I will benefit and the—either the attorneys or the others named in the class action are excluded from the settlement. I would say those are my primary responsibilities.

*Id.* at 21.

When asked to articulate why he had accepted the role of class representative, Hickey stated:

> [T]he banks are doing an injustice to the consumer by charging some of these fees, and I'm not saying that they don't have a right to charge some fees but I think it's appropriate that they disclose them so that the average person can understand and know what they really are.... [F]or instance, if my mother was to go out and take a mortgage today and had to incur a lot of these fees and things that are going on, she wouldn't understand them all, she'd end up paying them because the bank told her that that was right to do.... So I obviously treat them [the banks] fairly and honestly, they should treat me fairly and honestly. And I think the magnitude of the dollars involved here is fairly significant, even though perhaps to me, if you look at what it cost me at the closing, it's small dollars.

*Id.* at 23.

Finally, Great Western, citing *Rand v. Monsanto Co.,* 926 F.2d 596 (7th Cir.1991), faults Hickey for failing to advance the costs

of the litigation. *Rand* stands only for the proposition that a plaintiff need not agree to bear all costs of litigation in order to be deemed an adequate class representative. *Rand*, 926 F.2d at 601. *Rand* expressly condones the practice of counsel advancing the litigation costs of a class action, *id.* at 600, and this is consistent with professional rules of conduct. *See* Illinois Rules of Professional Conduct, Rule 1.8(d)(2); Northern District of Illinois Rules of Professional Conduct, Rule 1.8(e)(1) ("a lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter"). The fact that Hickey has not heretofore incurred financial obligation in the case does not defeat his adequacy as class representative.

A review of Hickey's deposition establishes that Hickey is committed to this litigation, understands the claims made, understands his solemn duties as a class representative, and has embarked on the litigation for reasons consistent with the policies behind TILA. The court is confident that Hickey will fairly and adequately represent the interests of the proposed class.

## II. *Typicality*

■ Rule 23(a)(3) requires that the claims of the representative be typical of the claims of the class. The representative's claims must have the "same essential characteristics as the claims of the class at large." *De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983). A claim is typical if it arises from the same event or course of conduct that gives rise to claims of other class members and all claims are based on the same legal theory. *De La Fuente,* 713 F.2d at 232 (citing H. Newberg, *Class Actions* § 1115(b) at 185 (1977)). The similarity of legal theory may control even where factual distinctions exist between the claims of the named representative and the other class members. *De La Fuente,* 713 F.2d at 232; *Patrykus,* 121 F.R.D. at 362.

■ Defenses that are specific to the named representative may defeat the requirements of typicality or adequacy of the representative. *J.H. Cohn & Co. v. American Appraisal Assocs.,* 628 F.2d 994, 999 (7th Cir.1980). The fear is that the class representative will become distracted by the existence of a defense unique to him and therefore compromise the interests of the class. *See Koos v. First Nat'l Bank,* 496 F.2d 1162, 1164–65 (7th Cir.1974). In order to defeat typicality or adequacy, the specific defense must be "unique, arguable and likely to usurp a significant portion of the litigant's time and energy." *McNichols v. Loeb Rhoades & Co.,* 97 F.R.D. 331, 334 (N.D.Ill. 1982). Nevertheless, although the existence of an arguable defense will be taken into account, the court is not required to deny certification for speculative reasons; the certification decision always remains within the sound discretion of the court. *Ross v. Bank South, N.A.,* 837 F.2d 980, 991 (11th Cir. 1988), *modified on other grounds,* 885 F.2d 723 (11th Cir.1989). Great Western asserts that two defenses are peculiar to Hickey.

### A. *Bona Fide Defense*

■ First, Great Western argues that the challenged fees were imposed by an attorney at the closing and that Great Western did not learn of imposition of the fees on Hickey until after issuance of the truth-in-lending disclosure. Great Western therefore claims a *bona fide* defense peculiar to Hickey under 15 U.S.C. § 1640(c).

At the outset, the court notes that it must accept the allegations in the complaint as true for purposes of class certification. The complaint alleges that "Great Western" included the challenged fees in the "amount financed" and excluded them from the "finance charge." The complaint also alleges that Great Western imposed the challenged fees in this manner pursuant to standardized policies and procedures. The court must accept these allegations as true. As a result, Hickey's claim is typical, for it arises out of the "same essential characteristics" as the claims of the class at large—that Great Western excluded the charges from the "finance charge" and included them in the "amount financed" through standardized procedures and practices. Moreover, the legal theory on which Hickey seeks recovery—that failure to properly disclose the charges violates TILA—is identical to that of the class.

TILA actions for inadequate disclosure arising from a creditor's standardized procedures or forms are particularly appropriate for class prosecution. *See Sarafin v. Sears, Roebuck & Co.*, 73 F.R.D. 585, 587 (N.D.Ill. 1977); 7A C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 1763 (1986).

In any event, the defense that Great Western asserts as peculiar to Hickey seems neither compelling nor unique at this early stage. Although the discussion that follows necessarily digresses into the merits, it is well-recognized that the class determination often involves considerations that are "enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982) (quoting *Mercantile Nat'l Bank v. Langdeau*, 371 U.S. 555, 558, 83 S.Ct. 520, 522, 9 L.Ed.2d 523 (1963)). Moreover, the admonition against considering the merits at the certification stage exists to avoid the cumbersome task of ensuring that every potential plaintiff has a likelihood of success on his claim before activating the class action machinery. *See* Wright, Miller & Kane at § 1759. In this case, Great Western has injected the merits into the certification process by alleging a unique defense. The court must do more than blindly accept Great Western's allegations. In order to decide whether the defense defeats certification, the court must delve into the merits to determine whether the defense is arguable, unique, and likely to usurp Hickey's time and energy to the detriment of the class. The court emphasizes that it draws no final conclusions from its analysis.

Great Western asserts a *bona fide* defense against Hickey because the challenged fees were imposed by an attorney at the closing without Great Western's knowledge. Under TILA, a *bona fide* defense is a clerical error, including calculation errors, programming errors, and printing errors; an error of legal judgment is not a *bona fide* error. *See* 15 U.S.C. § 1640. Where no clerical error is alleged as the cause of the failure to disclose, the *bona fide* error defense does not appear to be available. *See Hinkle v. Rock Springs Nat'l Bank*, 538 F.2d 295, 297 (10th Cir.

1976). Great Western does not allege an error of a clerical or ministerial nature.

Great Western also claims that it is not responsible for fees imposed by the attorney at closing because it had no knowledge of those fees and the truth-in-lending estimate had been prepared prior to the imposition of the fees. TILA obligates Great Western to disclose the "finance charge," and Regulation Z, 12 C.F.R. § 226, defines and provides instructions on calculating the finance charge. A finance charge includes any charge imposed directly or indirectly by the creditor as an incident or condition to the extension of credit. 12 C.F.R. § 226.4. The commentary to Regulation Z advises that "charges imposed on the consumer by someone other than the creditor are finance charges (unless otherwise excluded) if the creditor requires the services of the third party." 12 C.F.R. § 226.4(a), Supp. I, ¶ 3. Because Massachusetts law required an attorney to be present at the closing, it appears that Great Western required the services of the attorney. Accordingly, the fees imposed on Hickey by the Massachusetts attorney might be considered part of the finance charge that Great Western must disclose.

Finally, Great Western fails to show that its defense is unique to Hickey. The complaint alleges that Great Western improperly discloses certain charges as part of a standardized practice and procedure. Great Western counters that the charges were included by the closing attorney, and that this defense is peculiar to Hickey. Beyond bare assertion, however, Great Western offers nothing to establish uniqueness, such as the fact that the imposition of fees by the closing attorney is an aberration or that Great Western never uses attorneys or brokers during the loan process.

Great Western fails to show that this defense is unique or will distract Hickey. Accordingly, the defense does not defeat certification.

### B. *Actual Damages*

■ Great Western asserts that a plaintiff cannot recover actual damages under TILA unless the plaintiff demonstrates that he would have obtained credit on more favor-

able terms absent the violation of the Act. This appears to be the general rule.[2] *See Adiel v. Chase Federal Sav. & Loan Ass'n,* 630 F.Supp. 131, 133 (S.D.Fla.1986), *aff'd,* 810 F.2d 1051 (11th Cir.1987); *McCoy v. Salem Mortgage Co.,* 74 F.R.D. 8, 12 (E.D.Mich.1976). Because Hickey has considerable financial sophistication, Great Western claims that Hickey will have a difficult time establishing that the violation caused him actual damages. The implication, therefore, is that Hickey will find this inquiry so distracting as to compromise the interests of the class.

■ Great Western's arguments are unfounded for two principal reasons. If recovery of actual damages requires a showing of reliance on the part of individual consumers, creditors would necessarily have a unique defense against the class representative in every TILA class action premised on inadequate disclosure. Yet Great Western does not cite any case where TILA class certification has been defeated because the creditor maintained a unique defense as to actual damages against the class representative. The dearth of authority is telling. In contrast, several courts have held that individual issues surrounding reliance or actual damages are not significant enough to defeat the requirement that common issues of law or fact predominate. *See, e.g., Johnson v. Steven Sims Subaru, Inc.,* 1993 WL 761231, 1993 U.S.Dist. LEXIS 8078 (N.D.Ill.1993); *Adiel,* 630 F.Supp. at 133; *In re Corrugated Container Antitrust Litigation,* 80 F.R.D. 244, 252 (S.D.Tex.1978). Moreover, typicality may be satisfied even if factual distinctions exist between the claims of the class representative and the other members of the class. *Retired Chicago Police Ass'n,* 7 F.3d at 597.

■ In addition, the court finds it doubtful that Hickey would be impermissibly distracted by the reliance issue. Hickey sues for both actual and statutory damages. Statutory damages may be recovered in the absence of actual damages. *Brown v. Marquette Sav. & Loan Ass'n,* 686 F.2d 608, 614 (7th Cir.1982). In class actions, TILA provides for statutory damages up to the lesser of $500,000 or one percent of the creditor's worth. In contrast, the challenged fees, and thus the actual damages, amount to approximately $67 dollars. The court doubts that Hickey will become preoccupied with his claim for $67 (or less) in actual damages and thereby prejudice his possibility of a more substantial recovery of statutory damages.

The court finds that Hickey's claim is sufficiently typical of the class claims to permit class certification.[3]

**III.** *Predominance Of Common Issues Of Law Or Fact*

■ Under Rule 23(a)(2), the party seeking certification must demonstrate that there is at least one question of law or fact common to the class. *Patrykus,* 121 F.R.D. at 361. Where the question of law involves standardized conduct by a defendant toward the class, a common nucleus of operative facts is usually presented, and the commonality requirement is typically met. *Id.* Hickey alleges that Great Western followed standardized procedures and practices in its loan operations. Thus, common questions exist, such as whether the challenged fees were improperly assessed or disclosed in violation of TILA and whether Great Western engaged in unfair and deceptive acts and practices by understating the finance charge.

---

2. Hickey string cites authority for the proposition that a plaintiff need not prove that he would have obtained credit on more favorable terms in order to recover actual damages. The simple answer is that the cases Hickey cites either do not stand for that proposition or are distinguishable. For example, the fact that the FDIC is empowered by TILA to order restitution if it finds a "clear and consistent pattern or practice of violations," *see First Acadiana Bank v. FDIC,* 833 F.2d 548, 551 (5th Cir.1987), says nothing about the requirements for obtaining actual damages.

3. Great Western also alleges that, contrary to the allegations in the complaint, the challenged fees are not included in the "amount financed" in Hickey's transaction. Great Western does not allege that the fees are included in the "finance charge." TILA is violated if fees that are properly characterized as a finance charge are not disclosed as such. *See Brodo v. Bankers Trust Co.,* 847 F.Supp. 353, 357 (E.D.Pa.1994). In any event, the fact that the fees are disclosed in a column entitled "paid from borrower's funds at settlement" suggests that the fees were included in the "amount financed."

Great Western does not challenge commonality. Instead, it argues that individual questions predominate over the common questions, making a class action inappropriate. *See* Fed.R.Civ.P. 23(b)(3). Great Western cites four individual questions: (1) whether Great Western knew about the challenged fees before issuing Hickey's disclosure; (2) whether the fees were included in the "amount financed"; (3) whether Hickey could have obtained more favorable credit elsewhere; and (4) individual state consumer protection laws must be applied on the state law claims.

The first three questions do not present individual issues sufficient to defeat certification. Initially, the first and third questions are specific to Hickey and are therefore more relevant to whether Hickey's claim is typical than whether individual questions predominate across the class generally. Nevertheless, Great Western fares no better if the questions are applied to the class generally. Although it expresses no opinion on the issue, the court notes that Great Western has not yet demonstrated, by authority or otherwise, that its knowledge of the challenged fees is relevant to whether it violated TILA. In any event, this issue may be efficiently decided and applied within the class litigation. Similarly, determination of whether the challenged fees were improperly included in the "amount financed" or excluded from the "finance charge" in individual transactions is a simple ministerial task. Finally, class certification is not defeated because some class members may have to prove individual reliance to recover actual damages. As discussed above, differences in individual cases concerning damages or reliance do not defeat commonality or the predominance of common liability issues. *Franklin v. Chicago*, 102 F.R.D. 944, 949 (N.D.Ill.1984); *Johnson v. Steven Sims Subaru, Inc.*, 1993 WL 761231, 1993 U.S.Dist. LEXIS 8078 (N.D.Ill. 1993); *Adiel*, 630 F.Supp. at 133; *In re Corrugated Container Antitrust Litigation*, 80 F.R.D. 244, 252 (S.D.Tex.1978).

Finally, Great Western contends that common liability questions do not prevail in the state law claim because the consumer protection laws of numerous states must be applied to individual class members. A district court exercising its supplemental jurisdiction applies the law of the state in which it sits, including that state's choice of law rules. *Pucci v. Litwin*, 828 F.Supp. 1285, 1299 (N.D.Ill.1993). Illinois applies the law of the state with the "most significant relationship" to the case. *Abbott Lab. v. Nutramax Prods.*, 844 F.Supp. 443, 446 (N.D.Ill.1994). The state with the most significant relationship is determined upon examination of the contacts that various states have with the occurrence and the parties. *Koutsoubos v. Casanave*, 816 F.Supp. 472, 475 (N.D.Ill. 1993). In tort actions, the relevant contacts include the place where the injury occurred; the place where conduct causing the injury occurred; the domicile, residence, nationality, place of incorporation, and place of business of the parties; and the place where the relationship of the parties is centered. *Miller v. Hayes*, 233 Ill.App.3d 847, 175 Ill.Dec. 411, 414, 600 N.E.2d 34, 37 (1992); *Abbott Lab.*, 844 F.Supp. at 446. Although Illinois courts continue to give presumptive weight to the place of injury, that presumption "may readily be overcome if another state has a more significant interest in applying its law." *Vantassell–Matin v. Nelson*, 741 F.Supp. 698, 703 (N.D.Ill.1990). Great Western claims that the state laws of each individual class member will apply to that person's claim. Hickey asserts that the California consumer protection statute will govern because Great Western is located in California and devised its policies and procedures there.

The court is unable to decide this issue on a motion for class certification. Save for one deposition concerning the adequacy of the representative plaintiff, no discovery has been conducted in this case. Nothing in the record addresses with specificity the contacts that various states might have to this litigation. As a result, the court is in no position to accede to the use of the California consumer protection statute to govern the unfair practices claims. By the same token, however, the court cannot justifiably assume that the laws of several states will apply.

Pure speculation that the laws of different states will apply to different claims should not defeat an otherwise certifiable

class. *Elliott v. ITT Corp.*, 150 F.R.D. 569,-579 (N.D.Ill.1992); *In re VMS Sec. Litigation*, 136 F.R.D. 466, 480 (N.D.Ill.1991). In making this determination, the court notes that the complaint alleges that Great Western is a California corporation and that it formulated its allegedly TILA-violating policies and procedures there. Hickey presents Illinois authority stating, albeit in a slightly different context, that the consumer protection laws of a state where a creditor is located and formulated the tortious procedures may govern a deceptive acts and practices suit filed by a class of out-of-state plaintiffs. *See Martin v. Heinold Commodities, Inc.*, 117 Ill.2d 67, 109 Ill.Dec. 772, 778–79, 510 N.E.2d 840, 846–47 (1987); *Gordon v. Boden*, 224 Ill.App.3d 195, 166 Ill.Dec. 503, 507, 586 N.E.2d 461, 465 (1991). Moreover, the choice-of-law issue affects only one of the two counts in the complaint; if it later appears that the consumer protection laws of numerous states apply, the court may decertify the class as to the state law claims. *See, e.g., Barkman v. Wabash, Inc.*, 674 F.Supp. 623, 635 n. 5 (N.D.Ill.1987). In short, speculation that choice-of-law problems may defeat the predominance of common issues later is insufficient to avoid certification now.

## IV. *Superiority Of Class Action*

■ Great Western argues that this suit is inappropriate for a class action because the class seeks rescission. In addition to actual and statutory damages, Hickey actually sues for a *declaration* that the class has a continuing right to rescind its transactions.

Great Western cites *Nelson v. United Credit Plan*, 77 F.R.D. 54 (E.D.La.1978), for the proposition that a TILA class action may not be maintained if the class is seeking rescission as a remedy.[4] Much of *Nelson* is inapposite, and *Nelson* did not hold that TILA class action for rescission is prohibited as a matter of law. In *Nelson*, the district court granted two individual plaintiffs the

right to rescind their credit contract with a consumer lender. Thereafter, the plaintiffs sought rescission on behalf of a class of similarly situated individuals. The court denied certification, finding that the plaintiffs, who had already received their rescission relief, would have no "shared interest" with the class seeking relief. *Nelson*, 77 F.R.D. at 57. Thus, the court refused to certify the class because it found the plaintiffs were not adequate representatives of the class. Moreover, given the limited solvency of the creditor, the court also predicted that antagonistic interests would emerge between prospective class members, in that prospective class members would want to maximize recovery of their loan amounts to the disadvantage of other class members. *Id.* In addition, the court opined that TILA's provision of attorney's fees for rescission actions indicated that Congress did not intend rescission to be pursued in class actions.

Great Western's reliance on *Nelson* is misplaced. Unlike the plaintiffs in *Nelson*, Hickey has not rescinded his contract with Great Western. The *Nelson* court primarily refused certification on the grounds that the named plaintiffs were not adequate representatives because they had already obtained relief and no longer shared an interest with the prospective class. In contrast, neither Hickey nor his prospective class has obtained any relief from Great Western. They are in the same situation; as the class' fortunes go, so do Hickey's. Thus, Hickey maintains his shared interests with the prospective class. In addition, the fact that TILA provides for recovery of attorney's fees in rescission actions is not probative of an intent by Congress that rescission actions be maintained individually. For example, TILA also permits recovery of attorney's fees in successful damages actions, 15 U.S.C. § 1640(a)(3), but it is clear that class actions for damages are embraced by the Act.[5]

---

4. Great Western cites three other cases for the same proposition, but these cases draw their reasoning from *Nelson*.

5. Great Western also claims that permitting a class action for rescission would conflict with TILA's provision allowing the creditor ten (now 20) days written notice to rescind the transaction

"before the matter can be brought to court." *See James v. Home Construction Co.*, 621 F.2d 727, 731 (5th Cir.1980). To the extent TILA contains such a requirement, some authority suggests that a written complaint filed in a lawsuit sufficiently notifies the creditor that the plaintiff seeks rescission. *See Elliott v. ITT Corp.*, 764 F.Supp. 102,

One possible objection not explicitly raised by Great Western, although contained in some of its cited cases, is that concurrent class claims for both rescission *and* damages might create conflicts within the class between those who seek rescission and those who will continue to have an interest in the financial health of Great Western. Nevertheless, this potential conflict is too speculative to defeat certification at this stage. *See Bryan v. Amrep Corp.*, 429 F.Supp. 313, 318 (S.D.N.Y.1977); *Tober v. Charnita, Inc.*, 58 F.R.D. 74, 80 (M.D.Pa.1973); *Richmond v. Dart Indus.*, 29 Cal.3d 462, 174 Cal.Rptr. 515, 523–24, 629 P.2d 23, 31–32 (1981). It is presently unclear how many members the class will have, the identity of the members, and whether a true conflict will develop between those members. If a conflict emerges during the course of this litigation or after prospective class members have been notified, the court has several tools to address the conflict. Many conflicts may be averted simply through ample notice to unnamed class members and use of the Rule 23(b)(3) opt-out procedure. *See* Fed.R.Civ.P. 23(c)(2). If antagonisms persist, the court may divide the class into subclasses or even decertify the action. Other options include use of inventive procedural devices, such as the two-tiered approach employed in *Simon v. World Omni Leasing, Inc.*, 146 F.R.D. 197 (S.D.Ala.1992) and approved of in *Mount v. LaSalle Bank Lake View*, 1994 WL 731006, 1994 U.S.Dist. LEXIS 4027 (N.D.Ill.1994).[6] Class actions are generally the preferred method to adjudicate claims of insufficient disclosure. *See Goldman v. First Nat'l Bank*, 532 F.2d 10, 15 (7th Cir.1976); *Elliott v. ITT Corp.*, 150 F.R.D. 569, 585 (N.D.Ill. 1992). Because the fear of class conflict is speculative at this point, it does not defeat an otherwise meritorious motion for class certification.

106 (N.D.Ill.1991) (citing *Hunter v. Richmond Equity*, No. 85–P–2734–S, slip op. at 9, 1987 WL 109703 (N.D.Ala. Nov. 23, 1987)). In any event, absent better authority than *James*, the court declines to give this factor substantial weight in its certification decision.

6. In *Simon*, the legality of the leases at issue were litigated in the first stage. If the leases

Finally, Great Western argues that use of the class action mechanism is inappropriate because the alleged violation is only technical. Congress explicitly provided that certain claims could be maintained as class actions. *See* 15 U.S.C. § 1640(a)(3). One of these claims is improper disclosure of the "amount financed" and "finance charge." *See* 15 U.S.C. § 1638(a)(2), (a)(3). Regulation Z allows a "tolerance" for inaccurate finance charges only up to $10. *See* 12 C.F.R. § 226.18 n. 41. Hickey challenges $67 worth of fees imposed by Great Western. Accordingly, Great Western's alleged violation is not so technical as to preclude a class action.

### CONCLUSION

Hickey's motion to certify a class pursuant to Federal Rule of Civil Procedure 23 is granted.

were inadequate, the action proceeded to a monetary relief stage, where consumers were allowed either to opt out or to determine their awards within the class action. *See Simon*, 146 F.R.D. at 203. The opt-out procedure protected class members who did not wish to have their award limited by the TILA's damages cap for class actions. *See* 15 U.S.C. § 1640(a)(2)(B).