**In re SYNTHROID MARKETING LITIGATION.**

No. 97 C 6017.

MDL No. 1182.

United States District Court, N.D. Illinois, Eastern Division.

July 19, 1999.

Marvin Alan Miller, Miller, Faucher, Cafferty and Wexler, L.L.P., Chicago, IL, Duane C. Quaini, Christopher Qualley King, John Claiborne Koski, Erika K. Powers, Sonnenschein, Nath & Rosenthal, Chicago, IL, Michael D. Hausfeld, Lisa M Messetti, Cohen, Milstein, Hausfield & Toll, Washington, DC, Lawrence W. Schonbrun, Attorney, Berkeley, CA, for plaintiffs.

Howard Brian Prossnitz, Law Offices of Howard Prossnitz, Chicago, IL, for Julianne Rausch.

Lowell E. Sachnoff, Sachnoff & Weaver, Ltd., Chicago, IL, for Sandora Davila, Richard Saenz.

Scott Rhead Shepherd, Shepherd & Geller, LLC, Media, PA, for Mae Fischer.

Gary D. McCallister, Gary D. McCallister & Associates, Ltd., Chicago, IL, for Blue Cross and Blue Shield of Alabama, Louisiana Health Service & Indemnity Company dba Blue Cross and Blue Shield of Louisiana, Alabama Medicaid Agency, State of Louisiana, Department of Health and Hospitals, The, on behalf of themselves and others similarly situated, plaintiffs.

Lynde Selden, II, Selden Law Firm, San Diego, CA, Theodore J Holt, Hackard, Holt & Heller, Gold River, CA, Richard H Rosenthal, Law Offices of Richard H. Rosenthal, A Professional Corporation, Carmel Valley, CA, for Rosalie Lynch.

Lynde Selden, II, Selden Law Firm, San Diego, CA, Theodore J Holt, Hackard, Holt & Heller, Gold River, CA, for Jeanette C Miller.

Theodore J Holt, Hackard, Holt & Heller, Gold River, CA, Richard H Rosenthal, Law Offices of Richard H. Rosenthal, A Professional Corporation, Carmel Valley, CA, for Gordon Fjeld.

James L Johnson, Johnson Law Firm, Dallas, TX, for Cigna Healthcare.

Elizabeth Leigh Thompson, Lindley J. Brenza, Bartlit, Beck, Herman, Palenchar & Scott, Chicago, IL, Joseph C Kohn, Joanne Zack, Douglas A Abrahams, Kohn, Swift & Graf, P.C., Philadelphia, PA, Gregory P Han-

sel, Preti, Flaherty, Beliveau, Pachios & Haley, L.L.C., Portland, ME, for Aetna U.S. Healthcare, Inc., Aetna Life Insurance Co, Corporate Health Insurance Company.

James F Flug, Duncan, Weinberg, Miller & Penbroke, P.C., Washington, DC, for State of Michigan.

Michael D. Monico, Monico, Pavich & Spevack, Chicago, IL, James W Bergenn, Theodore M Space, Ross Garber, Shipman & Goodwin LLP, Hartford, CT, Mark D Fischer, Rawlings & Associates, Louisville, KY, for Blue Cross and Blue Shield of New Jersey, Inc.

Delilah Brummet, Attorney at Law, Chicago, IL, Tyrone C. Fahner, Diane Julia Romza–Kutz, Diane Green Smith, Kenneth J. Merlino, Mayer, Brown & Platt, Chicago, IL, Duane C. Quaini, Christopher Qualley King, Sonnenschein, Nath & Rosenthal, Chicago, IL, Terrence A. Callan, Mary B. Cranston, Roxane A Polidora, Saul D Bercovitch, Pillsbury, Madison and Sutro, San Francisco, CA, for BASF Corporation.

Delilah Brummet, Attorney at Law, Chicago, IL, Tyrone C. Fahner, Diane Julia Romza–Kutz, Diane Green Smith, Kenneth J. Merlino, Mayer, Brown & Platt, Chicago, IL, Duane C. Quaini, Christopher Qualley King, Sonnenschein, Nath & Rosenthal, Chicago, IL, Terrence A. Callan, Mary B. Cranston, Roxane A Polidora, Saul D Bercovitch, Pillsbury, Madison and Sutro, San Francisco, CA, Richard L Josephson, Travis James Sales, Baker & Botts, L.L.P., Houston, TX, for Knoll Pharmaceutical Company.

Terrence A. Callan, Mary B. Cranston, Roxane A Polidora, Saul D Bercovitch, Pillsbury, Madison and Sutro, San Francisco, CA, for Neil Kurtz, Carter H Eckert, Gilbert H Mayor.

Michael D. Monico, Barry A. Spevack, Monico, Pavich & Spevack, Chicago, IL, Terrence A. Callan, Mary B. Cranston, Roxane A Polidora, Saul D Bercovitch, Pillsbury, Madison and Sutro, San Francisco, CA, for Boots Pharmaceuticals.

Charles Gilbert Fergus, Illinois Attorney General's, Chicago, IL, Rebecca Desiree Ward, Hopkins & Sutter, P.C., Chicago, IL, Terrence A. Callan, Mary B. Cranston, Roxane A Polidora, Saul D Bercovitch, Pillsbury, Madison and Sutro, San Francisco, CA, Sandra S. Paguaga, Illinois Attorney General's, Chicago, IL, Randall L. Mitchell, James Dominick Adducci, Marshall Lee Blankenship, Adducci, Dorf, Lehner, Mitchell & Blankenship, P.C., Chicago, IL, for Flint Laboratories.

Terrence A. Callan, Mary B. Cranston, Roxane A Polidora, Saul D Bercovitch, Pillsbury, Madison and Sutro, San Francisco, CA, for Boots–Flint Inc, BA Buhler.

John Robert Sears, Missouri Attorney General, Jefferson City, MO, for State of Missouri.

John B Howard, Jr, Office of the Attorney General of Maryland, Baltimore, MD, for State of Maryland.

## *MEMORANDUM OPINION AND ORDER*

BUCKLO, District Judge.

The plaintiffs, third party payers, sued the defendants, Knoll Pharmaceutical Co. ["Knoll"], BASF Corporation ["BASF"], Boots Pharmaceuticals, Inc. ["Boots"], and individual defendants alleging federal and state claims relating to the marketing and sale of the drug Synthroid. The plaintiffs move to certify a class of all insurance providers and other third party payers, including self-funded plans but excluding governmental agencies, that paid Synthroid expenses incurred by any consumer in the United States and Puerto Rico from January 1, 1990 to the present time. For the following reasons, the motion for class certification is granted except with respect to the plaintiffs' common law claims.

### Background

Synthroid is the brand name for a synthetic thyroid medication containing levothyroxine. In 1997, after the Judicial Panel on Multidistrict Litigation transferred numerous consumer cases involving Synthroid to this court for consolidated pretrial proceedings, a group of consumers filed a master class action complaint. The master consumer complaint alleges that the defendants con-

cealed medical information including a study showing that other levothyroxine preparations are bioequivalent to Synthroid, and that the defendants falsely represented that other levothyroxine drugs are not bioequivalent to Synthroid. The consumers alleged that consequently, they took Synthroid rather than less expensive, bioequivalent substitutes, and that they paid more for Synthroid than they would have if the defendants had not suppressed the medical information and made the false representations.

Various groups of third party payers intervened in the consumer proceedings, alleging that they were injured when as a result of the defendants' fraudulent scheme they paid more for Synthroid on behalf of insured consumers. Blue Cross and Blue Shield of Alabama ["Alabama Blue Cross"], Louisiana Health Service & Indemnity Company d/b/a Blue Cross Blue Shield of Louisiana ["Louisiana Blue Cross"], Aetna U.S. Healthcare Inc., Aetna Life Insurance Co., and Corporate Health Insurance Co., Inc. ["Aetna"], and Brokerage Concepts, Inc. ["Brokerage Concepts"] [collectively "the plaintiffs"] move for class certification on their claims under the Sherman Antitrust Act, 15 U.S.C. § 2 *et seq.*, the Federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et. seq.* ["RICO"], various state consumer protection statutes including the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ["ICFA"], and the common law. The plaintiffs do not move for class certification on antitrust damages claims.

## Class Certification

Under Fed.R.Civ.P. 23(a), a proposed class must meet four preliminary requirements: "(1) the class is so numerous that joiner of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." The proposed class also must meet one of the requirements set forth in Fed.R.Civ.P. 23(b). The plaintiffs first seek certification under Rule 23(b)(3),

which allows class actions where "questions of law or fact common to the members of the class predominate over any questions affecting individual members, and ... a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The plaintiffs also seek certification pursuant to Rule 23(b)(2), which authorizes class actions where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief...." The plaintiffs must show that the proposed class is appropriate for certification. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir.1993).

When evaluating a motion for class certification, a court must accept the allegations in support of certification as true. *Hardin v. Harshbarger*, 814 F.Supp. 703, 706 (N.D.Ill. 1993). In addition, a court should not examine the merits of the case. *Retired Chicago Police Ass'n*, 7 F.3d at 598. Until there is a decision on the merits, the court may reevaluate and modify its class certification order. Fed.R.Civ.P. 23(c)(1).

### A. Rule 23(a)

#### 1. Numerosity

Under Rule 23(a), a class must be so numerous that joinder is impracticable. The plaintiffs allege that the proposed class includes thousands of third party payers, and therefore the numerosity requirement is met.

#### 2. Commonality

■ Under Rule 23(a)(2), questions of law or fact must be common to the class. Common factual and legal questions in this case include whether the defendants intentionally suppressed scientific information regarding the bioequivalency of Synthroid and other levothyroxine drugs, whether and when the defendants learned that other levothyroxine drugs are as effective as Synthroid, whether the defendants have continued to conceal or misrepresent the effectiveness of Synthroid, whether the defendants created and participated in a scheme to conceal material facts or make material misrepresentations regarding the bioequivalence of Synthroid and oth-

er levothyroxine drugs, whether the defendants have wrongfully obtained money from the plaintiffs, and whether the defendants' conduct violated federal and state law. The plaintiffs have alleged that the defendants engaged in a fraudulent scheme to conceal information regarding the bioequivalency of Synthroid and other levothyroxine drugs. The allegations involve standardized conduct by the defendants toward the potential class members, and in such a situation "courts have readily found a common nucleus of operative facts...." *Garner v. Healy,* 184 F.R.D. 598, 601 (N.D.Ill.1999) (collecting cases). Defendants' arguments relating to whether individual issues nonetheless predominate are relevant to Rule 23(b) and do not defeat a finding of commonality under Rule 23(a)(2).

### 3. Typicality

Under Rule 23(a)(3), the claims or defenses of the class representatives must be typical of the class. The typicality requirement is met if the plaintiffs' claims "arise[ ] from the same event or practice or course of conduct that gives rise to the claims of other class members and [the] claims are based on the same legal theory.... [Typicality] may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members." *De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983) (citations and quotations omitted). The defendants argue that the named plaintiffs are subject to the unique defense of waiver.

According to the defendants, well after the study that they allegedly suppressed was published, Alabama Blue Cross approached Knoll to negotiate a contract whereby Alabama Blue Cross listed Synthroid as a preferred product and received volume discounts for volume purchases of Synthroid. The defendants additionally allege that three of the four named plaintiffs have continued to treat Synthroid as a drug for which there is no generic equivalent, and that two of the named plaintiffs apparently benefitted when their insureds filled prescriptions with Synthroid rather than other levothyroxine drugs. The plaintiffs respond that the defendants

have continued to misrepresent the superiority of Synthroid, which has resulted in ongoing confusion about Synthroid and in a delay by the FDA in determining these issues.

▮ When "a major focus of the litigation will be on an arguable defense unique to the named plaintiff ... then the named plaintiff is not a proper class representative." *Koos v. First Nat'l Bank of Peoria,* 496 F.2d 1162, 1164 (7th Cir.1974). Just because there are defenses unique to the named plaintiffs, however, does not mean that a finding of typicality is automatically precluded, for "Rule 23(a)(3) mandates the typicality of the named plaintiffs' claims—not defenses.... [I]t is only when a unique defense will consume the merits of a case that a class should not be certified." *Gaspar v. Linvatec Corp.,* 167 F.R.D. 51, 58 (N.D.Ill.1996) (quoting *Riordan v. Smith Barney,* 113 F.R.D. 60, 63 (N.D.Ill.1986)). The plaintiffs allege that the defendants continued in their scheme to conceal material facts during the time period that the alleged waiver took place.

▮ Based on the plaintiffs' allegations, an affirmative defense of waiver would be addressed only after the plaintiffs established that there was a scheme to defraud. In addition, the defense relates to the common questions of when and whether the defendants knew about the bioequivalency of Synthroid and other levothyroxine drugs and whether the defendants were intentionally suppressing information regarding bioequivalency. Therefore, even assuming that the defendants have an arguable defense of waiver against the named plaintiffs, such a defense would not consume the merits of this case and is not a basis for finding that the named plaintiffs' claims are atypical.

Moreover, the complaint alleges that the plaintiffs suffered economic harm when the defendants created and participated in a scheme to suppress information and make misrepresentations regarding the bioequivalency of Synthroid and other drugs. All plaintiffs are alleged to have been injured by the same course of conduct by the defendants, and to prove their claims all class members would need to show that the defendants engaged in the same conduct. The interests of the class representatives and the

absentee class members are sufficiently aligned. Accordingly, the plaintiffs satisfy the requirements of Rule 23(a)(3).

### 4. Adequacy of Representation

Rule 23(a)(4) requires that the class representatives fairly and adequately protect the class interests. The plaintiffs in this case, like the putative class members, have claims for economic damages allegedly caused by the same conduct by the defendants. The plaintiffs do not appear to have interests antagonistic to the class, and their alleged economic harm creates a sufficient interest in the outcome to litigate vigorously. Plaintiffs' counsel are also qualified. Therefore the plaintiffs have satisfied Rule 23(b)(4).

### B. Rule 23(b)(3)

The plaintiffs first move to certify their class pursuant to Rule 23(b)(3). Pursuant to Rule 23(b)(3), common issues of law or fact must predominate over individual issues, and a class action must be the superior method of adjudication.

### 1. Predominance

■ The defendants argue that class certification under Rule 23(b)(3) is precluded because individualized issues relating to causation and damages predominate over the common issues in this lawsuit. First, defendants argue that certification is precluded because plaintiffs cannot demonstrate liability and causation with class-wide proof. According to defendants, causation depends upon "individualized inquiries into decisions of consumers, physicians and pharmacists to purchase, prescribe and dispense Synthroid" as well as "a careful investigation of the individual facts surrounding each [plaintiff's] knowledge and policies with respect to Synthroid." (Def.Mem. at 19–20). The plaintiffs, however, allege a pattern of standardized conduct by the defendants, consisting mainly of a fraudulent scheme to conceal scientific information regarding the bioequivalency of Synthroid and other levothyroxine

drugs. These allegations involve "a common course of conduct that leads to injury of all the class members." *Toney v. Rosewood Care Ctr., Inc. of Joliet*, 1999 WL 199249, at *9 (N.D.Ill.1999) (quoting *McDonald v. Prudential Ins. Co. of Am.*, 1999 WL 102796, at *2 (N.D.Ill.1999)). As the court notes in *Cannon v. Cherry Hill Toyota, Inc.*, 184 F.R.D. 540, 545 (D.N.J.1999), "[t]hat common issues must be shown to 'predominate' does not mean that individual issue[s] need be non-existent. All class members need not be identically situated upon all issues, so long as their claims are not in conflict with each other" (citation and quotations omitted).

In support of their argument that individualized issues of liability and causation predominate, defendants cite to two cases from this district denying class certification in pharmaceutical marketing fraud cases, *Dhamer v. Bristol–Myers Squibb Co.*, 183 F.R.D. 520 (N.D.Ill.1998), and *Fisher v. Bristol–Meyers Squibb Co.*, 181 F.R.D. 365 (N.D.Ill.1998). Unlike the plaintiffs in *Dhamer* and *Fisher*, who were suing for personal injury, both the third party plaintiffs and the consumer plaintiffs in the case at bar are suing for economic injury. Individual health issues need not be resolved with regard to every Synthroid plaintiff, as was necessary in *Dhamer*, 183 F.R.D. at 530 (noting that plaintiffs acknowledged a significant individual issue was whether a particular class member was addicted to the prescription drug), and *Fisher*, 181 F.R.D. at 370 ("even to qualify for membership in the proposed class every plaintiff will need to establish that he or she was in fact addicted").

The defendants also point to conversations that took place between the plaintiffs and the defendants concerning Synthroid and the study, as well as individual practices of the plaintiffs concerning Synthroid after the study was published. Individual reliance, however, is not an element of an ICFA claim or a RICO claim predicated on acts of mail or wire fraud.[1] *See Cannon v. Nationwide*

---

1. The defendants argue that reliance is an element of a common law claim for fraud, fraudulent concealment, and negligent misrepresentation. As is discussed *supra* with regard to Rule

23(b)(3), the plaintiffs have not analyzed state law variences with regard to these claims and have not demonstrated that such variences would be manageable. For the same reasons,

*Acceptance Corp.,* 1997 WL 779086, at *3 (N.D.Ill.1997) (collecting cases). To establish proximate cause, the plaintiffs must show that the "purchases occurred after the allegedly fraudulent statements were made, and that the alleged fraud 'directly or indirectly' injured Plaintiffs." *Garner v. Healy,* 184 F.R.D. 598, 602 (N.D.Ill.1999). A RICO claim predicated on mail or wire fraud "focuses on the defendant's conduct in devising or intending to devise a scheme to defraud, not the individual experiences of each defrauded person." *Peterson v. H & R Block Tax Servs., Inc.,* 174 F.R.D. 78, 84 (N.D.Ill. 1997). Furthermore, if the defendants are found liable for creating and participating in a fraudulent scheme to conceal scientific information and to make material misrepresentations regarding Synthroid, and individualized determinations regarding proximate cause become necessary, such determinations can be made at that time, with the creation of subclasses and reference to a magistrate judge as needed. *See, e.g., Garner,* 184 F.R.D. at 602 ("if an individualized assessment of proximate cause should prove to be necessary ... those questions can be resolved—if necessary—after liability is determined and damages are being considered").

Defendants next argue that certification is precluded because of individualized issues regarding damages. According to the defendants, the plaintiffs will have to show that any injury borne by them was first passed on through wholesalers, retailers, and consumers. In support of this argument, the defendants cite to various cases denying class certification for indirect purchasers bringing antitrust claims in brand name prescription drug litigation. The plaintiffs, however, are not moving for class certification on antitrust damages claims. Instead, they are requesting an injunction on their antitrust claim, and thus are not concerned with proving the amount of damages.[2] Furthermore, the cases involving brand name prescription drug litigation alleged a conspiracy involving numerous manufacturers and numerous prescription drugs. *In re Brand Name Pre-*

*scription Drugs Antitrust Litig.,* 1994 WL 663590, at *1 (N.D.Ill.1994). This case involves one manufacturer and one drug.

As for the plaintiffs' claims under RICO and state consumer statutes, federal courts "have consistently and firmly adhered to the principle that once liability has been demonstrated, complexity or uncertainty as to the amount of damages will not preclude recovery." *In re Folding Carton Antitrust Litig.,* 75 F.R.D. 727, 735 (N.D.Ill.1977). Plaintiffs have pointed out that defendants' expert was able to calculate the average co-payment for HMO plans over a range of years, the average wholesale price of Synthroid, and monthly market share percentages for Synthroid. Defendants have also analyzed and predicted Synthroid sales and market shares based on price changes. In addition, if it becomes necessary, individualized damages questions can be addressed after liability is determined. *See, e.g., Johnson v. Aronson Furniture Co.,* 1998 WL 641342, at *8 (N.D.Ill. 1998) ("individualized questions of injury may be resolved after the determination of the common questions").

## 2. *Superiority*

■ Pursuant to Rule 23(b)(3), a class action also must be superior to other methods of adjudicating the controversy. When making this determination, a court should consider four factors: 1) each class member's interest in litigating their claims separately; 2) whether other lawsuits arising from the same controversy have been filed; 3) the desirability of concentrating the litigation in one forum; and 4) whether the class action is manageable. Fed.R.Civ.P. 23(b)(3). The defendants challenge the manageability of the proposed, national class bringing claims under numerous state consumer statutes. The defendants also argue that variations in state law preclude class certification on the plaintiffs' common law claims. Furthermore, the defendants argue that the class members

---

the plaintiffs have not met their burden in showing that common questions relevant to their common law claims would predominate over the jurisdictional issues.

2. Defendants' argument that the class representatives lack standing to sue for antitrust damages is thus moot.

have a substantial interest in litigating their claims separately.

■ According to the defendants, the plaintiffs' state consumer fraud statute claims require the application of the laws of 50 states, and the substantive differences in the statutes preclude national certification. As the defendants argue, " ' serious reservations' have been expressed in various circuits—including the Seventh Circuit—about classes whose members will be governed by the tort law of 50 different states." *Garner*, 184 F.R.D. at 602 (quoting *Fisher*, 181 F.R.D. at 368). The plaintiffs, however, argue that they are not seeking to certify their claims under the law of 50 states, and that their claims can be brought under the law of Illinois or New Jersey. The plaintiffs allege that the defendants have principal places of business in Illinois and New Jersey, and that the defendants engaged in their fraudulent scheme in both of these states.

Some courts have stated that non-residents are able to bring claims under the ICFA if "the 'deceptive act or practice' of which they complain was perpetrated in Illinois." *Hastings v. Fidelity Mortgage Decisions Corp.*, 984 F.Supp. 600, 615 (N.D.Ill.1997) (quoting *Rohlfing v. Manor Care, Inc.*, 172 F.R.D. 330, 340 n. 10 (N.D.Ill.1997)). *See also Fry v. UAL Corp.*, 136 F.R.D. 626, 637 (N.D.Ill. 1991) (rejecting argument that the ICFA applies only to residents); *Cirone–Shadow v. Union Nissan of Waukegan*, 1995 WL 238680, at *4–5 (N.D.Ill.1995) (the same). *But see Swartz v. Schaub*, 818 F.Supp. 1214 (N.D.Ill.1993) (finding that the ICFA is only intended to protect Illinois consumers). In addition, it seems likely that the plaintiffs could bring their claims under the New Jersey consumer fraud statute, N.J.Stat.Ann. § 56:8–1 *et seq.*, even if they are out-of-state residents. *See Boyes v. Greenwich Boat Works, Inc.*, 27 F.Supp.2d 543, 547 (D.N.J. 1998) (finding that the New Jersey statute applies "to sales made by New Jersey sellers even if the buyer is an out-of-state resident and some aspect of the transaction took place outside New Jersey").

At this stage in the proceeding, however, it is impossible to resolve the choice of law issues. Many courts decline to make a choice of law determination when relying only on allegations in class certification briefs. *See, e.g., Hickey v. Great Western Mortgage Corp.*, 158 F.R.D. 603, 612 (N.D.Ill. 1994) ("The court is unable to decide [the choice of law] issue on a motion for class certification.... Nothing in the record addresses with specificity the contacts that various states might have to this litigation"); *Elliott v. ITT Corp.*, 150 F.R.D. 569, 579 (N.D.Ill.1992) (collecting cases and finding that "the potential application of different state laws is not in itself a deterrent to class certification"). Based on the plaintiffs' allegations at this point, it is only speculation that the law of all 50 states would apply and render this class action unmanageable. Once again, class certification orders are modifiable until there is a decision on the merits.

The defendants also argue that substantive differences in state law would render unmanageable a class action involving plaintiffs' common law claims. The plaintiffs have not suggested which state's law or laws would apply to these claims; instead, apparently conceding that numerous state laws would apply and that variations exist, they argue that any substantive differences would not predominate over the common questions. The burden is on the plaintiffs to demonstrate that a class is appropriate for certification. *Retired Chicago Police Ass'n*, 7 F.3d at 596. The plaintiffs have not, however, made any attempt to analyze state law variances and demonstrate how a national class action on their common law claims would be manageable. Therefore the plaintiffs have not met their burden to show that certification is appropriate on their common law claims. *See Castano v. American Tobacco Co.*, 84 F.3d 734, 741 (5th Cir.1996) ("A district court's duty to determine whether the plaintiff has borne its burden on class certification requires that a court consider variations in state law ..."); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir.1996) (decertifying class where court failed to consider how the law of negligence varied from state to state).

Defendants further argue that a class action is not a superior method of litigation because the potential class members are so-

phisticated insurance companies with substantial financial incentive to sue individually. In support of this argument, the defendants cite to cases that they characterize as decertifying classes because class members did not respond to notice and had the incentive and opportunity to sue individually. *In re Rhone–Poulenc Rorer, Inc.*, 51 F.3d 1293 (7th Cir.1995); *Robin v. Doctors Officenters Corp.*, 123 F.R.D. 579 (N.D.Ill.1998). The defendants have not offered any indication that class members in this case would not respond to notice; however, if this were to happen the class could be decertified until a decision on the merits. In addition, the defendants do not allege that third party payers have filed lawsuits regarding this matter in other forums. Moreover, consolidation of the plaintiffs' claims is desirable because the claims are based on the same alleged conduct by the defendants. A class action is therefore the superior method of adjudicating this controversy.[3]

### Conclusion

For the reasons discussed above, the plaintiffs' motion to certify a class of all insurance providers and other third party payers, including self-funded plans but excluding governmental agencies, that paid Synthroid expenses incurred by any consumer in the United States from January 1, 1990 to the present time is granted except with respect to plaintiffs' common law claims.

---

**3.** Because the class is certifiable pursuant to Rule 23(b)(3), it is unnecessary to discuss whether the class is also certifiable pursuant to Rule 23(b)(2). It should be noted, however, that certification under Rule 23(b)(2) is appropriate only where injunctive or declaratory relief is the primary relief sought. *See McDonald*, 1999 WL 102796, at *2 ("injunctive or declaratory relief [must] be the predominant remedy requested for the class members") (quoting *Doe v. Guardian Life Ins. Co. of Am.*, 145 F.R.D. 466, 477 (N.D.Ill. 1992)).